IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| JILL MARCIN | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : Civil Action No: 13-108 (ABJ) |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY | : |
| | : |
| and | : |
| | : |
| THE MITRE CORPORATION LONG TERM | : |
| DISABILITY INSURANCE PROGRAM, | : |
| | : |
|     Defendants. | : |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, by and through counsel, hereby oppose Defendants' Motion to Dismiss in this action, and set forth the following grounds:

FACTS

The Defendants assert facts which are of their own invention and are arguable nonsensical.

*Defendants' Off-Brief Factual Argument*

For some unknown reason, the Defendants argue in an unrelated fashion to this instant briefing. They claim that since this Court remanded the claim to Reliance to reconsider and explain their claim denial adequately, there was no right to appeal by the Plaintiff as would be her right in response to any other claim denial under the ERISA statutory guidelines. Of course, the Defendants fail to state that they set forth new, additional grounds for their claim denial which had not been set forth in their prior claim denials. Further, the Defendants fail to state that

1

they took an excessive period of time[1] to make their claim denial despite the fact that Plaintiff's counsel file a timely appeal as would be required pursuant to the ERISA guidelines.  Their refusal to consider the appeal has led to a deemed denial and the current second stage of litigation in this case.

For some reason, Defendants are working under the misconception that they could just deny the claim again and the Plaintiff would have no recourse whatsoever.  This position runs contrary to the entire purpose of an administrative review process as purposefully designed under the ERISA statute.  They take the position that this Court's Order that they would need to reconsider their explanation would terminate all other litigation as no right to appeal the claim denial was referenced.  Such a position is quite self-serving and runs contrary to the entire ERISA administrative appeal process which **always** allows a right of appeal to claimants in response to an administrative decisions denying claims.

This counsel realizes this Court's intention of remanding this matter back for another round of administrative appeal process in hopes that the matter could be settled without further litigation.  It is obvious that the Defendants understand this as well or they would moved to dismiss the Complaint in its entirety.  As they have not, they have conceded this issue.

Unfortunately, these facts must be brought to light in spite of Defendants' stating that contesting inapposite was "not the subject of the present motion." (D Motion p.2), but could not help but argue these points nonetheless.

---

[1]And did not respond until this counsel prompted them into action via e-mail warning them of a potential filing for contempt.  This Court issued its Order on 9/28/12 and the Defendants took 101 days to issue their decision.

*Defendants' On-Brief Factual Argument*

This counsel made a comprehensive request for documentation to both Reliance and the

Plan Administrator on 1/15/13 (See Exhibits 1 and 2) which included the following, among other

requests:

> A true and correct copy of all internal claims procedures, training
> instructions, protocols, other instructional, training, or guiding materials
> or internal memorandum intended to be followed, used, or referred to
> during the course of the review or preparation of employees for this
> purpose.  This includes all medical and vocational guidelines utilized as
> part of the review;
>
> Copies of any records, medical or otherwise, you have obtained, prepared,
> reviewed, or otherwise considered in any way in connection with the
> claim;
>
> Any materials removed from the claims file or placed in a separate file,
> including medical files containing raw data, investigation documents, or
> legal files with related memoranda;

The Defendants allege that the ERISA statute only applied to "specified plan documents"

and not to "claims documents."  (D Motion, p.2), yet cite no legal authority for such

differentiating these types of documents.  For this reason, it is little more than an artifice and

bears no substance.

The claim file produced to this counsel contains several references to use of disability

durational guidelines.  There are several references to "See Anticipated Duration" without

further specification (See example Exhibit 2).  Such guidelines are commonly utilized by the

insurance industry and have been addressed in many contexts.

The claim file included only a portion of the Reliance Claims Guidelines as the insurer

produce only a few pages. (Attached hereto as Exhibit 3) The full set of guidelines produced in

*Anderson v. Reliance Standard Life Ins. Co.,* 2012 WL 32568 (D.Md.1/5/12) [2] was over 200

pages in length.  Therefore, it is abundantly clear that Reliance has refused to produce these

documents in its possession.  These guidelines are the rules by which claims are analyzed by the

insurer and cannot be termed anything less than "pertinent."

*Literature Concerning Use of Disability Durational Guidelines*

Disability guidelines cannot be blindly accepted or considered inviolate.  If that were the

case, they would cease to be guidelines and would become "standards" or even "mandates."

Guidelines and their application must be directed primarily to the well-being of the patient.

Guidelines must be based on appropriate data and research.  The should reflect outcomes, and

should be constantly monitored, evaluated, and updated.  The purpose of "guidelines" are to

serve as "guides" in promoting education of health care providers in the interest of high-quality

patient care.  Punitive or disciplinary emphasis is counterproductive.  Guidelines cannot

encompass every diagnosis or treatment of all disease states, nor can the include all variations

that occur in the complexity of the human response which includes comorbid conditions.  Where

clear discrepancies exist, the physicians is responsible for guiding the individual patient's course

leading to diagnosis and treatment.  The guidelines should be flexible to permit variations in

patient condition including severity of illness and comorbid conditions.  Guidelines should be

formulated "locally" so as to account for health care providers knowledge and standard of care.

Guidelines that serve to restrict patient care for reasons other than the patient's well-being are

not acceptable.  Guidelines that are formulated through a rigorous process should be followed in

---

[2]Produced under a protective order and will be made available to this Court upon its
Production Order.

good faith with patterns of exceptions due to variations in patient condition utilized to refine the guidelines. *Bulletin of the American College of Surgeons.* March, 1998; 83(3).

For durational guidelines to be effective, they must be accepted by all parties. Due to the great variability in long term disability claims, these guidelines do not allow for detailed case management. As part of the case management process, the duration guidelines should be shared with the treatment providers who should provide information justifying deviation from the provided "norms." Increasingly, these guidelines are viewed as a "one-sided tool to force employees back to work earlier than they should." Prezza, C and Denniston, P. The use of evidence-based duration guidelines. *J Work Comp.* Summer, 2001; 10(4)(reprint)

Poor use of the guidelines takes place when guidelines user wait until an "at risk" date to take some action. These guidelines can create a false sense of security due to a cycle of inaction. It is more worthwhile to use the guideline as an initial prediction of disability duration or, as characterized, "today's best guess." Some organizations will utilize the guidelines as a tripwire to trigger increased effort or other activities. Others will use the guideline as a "goal to beat." Respected, evidence-based guidelines carry much more weight than arbitrary or confidential ones. Estimating disability duration for the purpose of reserves is a conservative business. Although it is"not good form to revise reserves, especially upwards." Case managers taking risks to lower the disability duration should be rewarded. Those who consistently achieve goals deserve extra recognition. Christian, J. President of Webility.md (2005).

There are several complications resulting from use of disability duration guidelines. Guidelines based on "actual data" reveal that prolonged disability is very common. There tends to be a mismatch for disability durations shown for a worker's condition functional ability and

the demand s of their usual job.  Transitional work is an especially poor fit as the job assignment may have little or no relationship to the usual job.  It is often the case that the transitional work assignment has been designed to put little or no demand on the affected body part.  Another obvious variation in injured workers in the variation of severity within a same diagnosis.  This results in a paradox with a case manager considering extent and nature of treatment while simultaneously being concerned with over-treatment and excessive disability.  The disability duration guidelines do not account for multiple diagnoses.  Precise quantification of the effect on the variables on disability duration is beyond the scope of any existing guidelines.  However, organizations frequently mandate use of guidelines all the time so that this exclusion is violated and claims managers make inappropriate decisions. *Id.*

Some guidelines are explicit in setting forth limitations concerning their use.  The Disability Duration Guidelines for the Workers' Safety & Compensation Commission of the Northwest Territories and Nunavut state that the guidelines are not intended to "coerce injured workers back to work nor are they provided to legitimize periods of unwarranted disability."  The guidelines are not meant to "replace the reasoned clinical judgements of attending health care professionals regarding the injured worker's absence from work during recovery."  The guides need to be utilized in conjunction with all the combined information in an injured worker's case.  *The Medical Disability Advisor*, 5th ed. (2005) by the Reed Group, Ltd. , in its Introduction

(pp. 12 - 14) states that disability is relational concept and does not equal functional impairment.  The vast majority of people with disability have minimal objective findings on careful medical evaluation.  For example, pain is the most common disabling condition which is impossible for

6

another person to observe or measure directly.  Managing medical disability by utilizing

disability duration guidelines is, admittedly, and imperfect approach.  These guidelines are not

intended to be used as a device to coerce workers back to work when they are unable to perform

their normal duties.   Use of the tool was to be done with "prudence, compassion, and

thoughtfulness", and, in so doing, "treat everyone the way you, yourself, would like to be

treated."

The studies investigating factors that predict disability after work-related injuries have

been limited to specific types of injury and only include small non-population-based samples or

have not adjusted for severity of the injury.  What has been found is that injured workers who

have not regained satisfactory work status two years after injury have a low chance of returning

to work. In addition, manual labor jobs are associated with disabilities of longer duration.

Cheadle, A, et al.  Factors influencing the duration of work-related disability: A population-

based study of Washington State Workers' Compensation.  *Am J Pub Health*.  February, 1994;

84(2): 190 - 6.

Disability guidelines in Europe were criticized for still needing more research on the

functional capacity of people with disabilities and on persons with chronic diseases.  El de Boer,

W.  Evidence-based guidelines in the evaluation of work disability: an international survey and a

comparison of quality of development.  *BMC Public Health*.  September, 2009; 9: 349 (online

publication).

When disability guidelines are utilized, use warnings are customarily given, including:

- Wyoming Workforce Services us of *The Medical Disability Advisor* with warning

  that merely "guidelines" which do not take into account many factors that

influence the length of any specific diagnosis.  No set of guidelines can substitute

for the strategy agreed upon by the patient and the caregiver

- Workers Compensation Board of PEI using the *Safety Matters @ Work* guidelines noted that disability duration may vary from these guidelines and not intended to be strict rules.  Factors influencing duration include age, prior experience with condition, medical complications, medications, condition severity, response to treatment, etc.

- The Alberta Worker's Compensation Board duration guidelines are prefaced by stating that they are only "an estimate of the approximate time required for workers to return to work after various work-related injuries and treatments." The maximum time allotted is not necessarily a return to work date, but rather a time frame for asking questions should the worker not have returned to work by the allotted time period.  Variance from the guidelines is warranted to meet the health care needs of the worker and may be influenced by many factors

- The *WorkSafe NB Disability Duration Guidelines* state that disability duration is not the same a healing time.  The guidelines only give an estimate of return to work and are not a definite return to work date.  Many factors influence recovery time.  Variance from the guidelines is warranted to meet the health care needs of the worker

The use of these guidelines by the Defendants is clearly arbitrary and capricious.  As the legal argument will point out, these parties were responsible for producing this information upon proper ERISA-based request.

8

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a claim should be dismissed if it fails to state a claim upon which relief can be granted with the claim being more than just possible.  In establishing this, the claim must offer more than labels, conclusions, or formulaic recitation of the elements of a cause of action.

A motion to dismiss must demonstrate that a complaint does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  To satisfy this, the complaint must contain "more than labels and conclusion" or a "formulaic recitation of the cause of action" in order to survive a motion to dismiss.  *Id*,.at 555.  The minimal requirement is that the factual allegations "raise a right to relief above the speculative level" and that probability of success is not considered. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  To this end, the court need only to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. From this, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  *Id*.

These precedents  have been upheld in this Circuit in *Arnold v. Moore*, 980 F.Supp.28 (D.C.Cir. 1997)(holding that allegations of beating a plaintiff while handcuffed sufficiently stated a claim for use of excessive force) and *Martin v. Ezeagu*, 816 F.Supp. 20 (D.C.Cir. 1993)(ongoing pattern of exclusion from prison library and harassment was sufficient to state meaningful access to courts claim).

ARGUMENT

*Plaintiff's Claim for Penalties is Well-Established Under the Pertinent Authority.*

<u>Basis of Action for Penalties</u>

There is substantial statutory and case law authority which entitles Plaintiff to statutory penalties as a result of Defendants' refusal to produce pertinent documents as required under ERISA.

29 C.F.R. §2560.503-1(g)(1)(v)states:

> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon I making the adverse [benefit] determination [being communicated to the claimant, the plan's notice communicating the determination must set forth] either the specific rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule [,etc.]....will be provided free of charge to the claimant upon request.

> (1) Any administrator (A) who fails to meet the requirements of paragraphs (1) or (4) of §606, §101(e)(1), or §101(f) with respect to a participant or beneficiary or (B) who fails or refuses to comply with a request for information which such administrator was required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day form the date of such failure or refusal, and the court may in its discretion or der such other relief as it deems proper.[3] [4]

<u>What Documents Must Be Provided</u>

Specific documents described in the ERISA statute itself at § 104(b)(4), 29 U.S.C. § 1024(b)(4), include the summary plan descriptions and other documents under which the plan is operated.  Further, § 109(c), 29 U.S.C. § 1029(c)  provides that the Secretary of Labor may also

---

[3]As required under the Debt Collection Improvement Act of 1996, the $100 limit has been increased to $110 for violations occurring after July 29, 1997. 62 Fed. Reg. 40696.

[4]ERISA § 502(c)(1) also provides for similar penalties for an administrator's failure to provide COBRA notices and required notices related to transfers of excess pension plan assets to a health benefits account.

10

prescribe what other documents should be furnished:

> (c) Format and content of summary plan description , annual report, etc., required to be furnished to plan participants and beneficiaries. --
>
> **The Secretary may prescribe the format and content of** the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and any other report, statements, or **documents** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), **which are required to be furnished or made available to plan participants and beneficiaries** receiving benefits under the plan.(emphasis added).

The correlative reading of §109(c) and §502(c) gives the Secretary authority[5] to establish the format and content of what documents are required to be produced. Therefore, any administrator not complying with such requirements may be found liable for payment of a §502(c) penalty.

The Secretary of Labor's ERISA claim procedure regulations are set out in 29 C.F.R. § 2560.503 - 1(h)(2)(iii) set forth the documents to be provided in order to provide a full and fair review, requiring that the Plan must:

> provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

The Department of Labor has been explicit about the requirements of the statute in stating:

> [DOL] has taken the position that internal rules, guidelines, protocols, or similar criteria would constitute instruments under which a plan is

---

[5]Also, in addition to the specific authority to prescribe what documents must be provided, the Secretary also has general authority under "this subchapter" to "prescribe such regulations as he finds unnecessary or appropriate to carry out the provisions of this title."  ERISA § 505, 29 U.S.C. § 1135.

> established or operated within the meaning of section 104(b)(4) of ERISA
> and, as such, must be disclosed to participants and beneficiaries."  U.S.
> Department of Labor, "Frequently Asked Questions about the Benefit
> Claims Procedure Regulation," C-17,
> www.dol.gov/ebsa/FAQs/faq_claims_proc_reg.html.

The Secretary goes on to explain at Paragraph (m)(8) what documents are relevant to the claim,

and are thus required to be produced:

> (i)  A document, record, or other information shall be considered
> "relevant" to a claimant's claim if such document, record, or other
> information.
>
> (ii) **Was submitted, considered, or generated in the course of making
> the benefit determination, without regard to whether such document,
> record, or other information was relied upon in making the benefit
> determination;**
>
> (iii) Demonstrates compliance with the administrative processes and
> safeguards required pursuant to paragraph (b)(5) of this section in making
> the benefits determination; or
>
> (iv) In the case of a group health plan or a plan providing disability
> benefits; , constitutes a **statement of policy or guidance with respect to
> the plan concerning the denied treatment option or benefit for the
> claimant's diagnosis**, without regard to whether such advice or statement
> was relied upon in making the benefit determination. (Emphasis added)

The law is clear that ERISA disclosure provisions are to be read broadly.  *Bartling v.*

*Freuhauf Corp.*, 29 F.3d 1062 (6th Cir. 1994)(holding that, because  ERISA requires a plan to

maintain actuarial reports, that such documents must be provided to a participant upon request).

The legislative history behind the provision makes the requirement of production of

pertinent documents including claims guidelines very clear.  In addition to the general

requirements cited, subparagraph (m)(8)(iii) further provides that, among the information that a

plan must provide a claimant upon request after receiving an adverse benefit determination, is

any information that the plan has generated or obtained in the process of ensuring and verifying

that, in making the particular determination, the plan complied with its own administrative processes and safeguards that ensure and verify appropriately consistent decision making in accordance with the plan's terms.  It is not the Department's intention in this regard to require plans to artificially create new systems for the sole purpose of generating documents that can be handed to a claimant whose claim is denied in order to satisfy this disclosure requirement.  The Department anticipates that plans generally will have systems for ensuring and verifying consistent decisionmaking that may or may not result in there being disclosable documents or information pertaining to an individual claims decision.  *65 FR 70246 (11/21/00)*

   This proposal attempted to clarify the 1977 regulation's requirement that claimant's be afforded access, after a benefit denial, to "pertinent documents."  Based on its conclusion from RFI comments that there was substantial public confusion concerning the meaning of the term "pertinent," the Department proposed to replace that term with the term "relevant."  The proposal further stated that a document would be considered "relevant" to a claim whether or not such document was in fact relied upon by the plan in making the adverse benefit determination. As stated in the preamble to the proposal, the Department believed that these changes would make clear the claimants must be provided access to all of the information present in the claims record, whether or not the information was relied upon by the plan in denying the claim and whether or not that information was favorable to the claimant.  Such full disclosure, which is what the 1977 regulation contemplated, is necessary to enable claimants to understand the record on which the decision was made to assess whether appeal would be justified.  *Id*.

   In Advisory Opinion 96-14A, the Department of Labor stated that:

> any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a

13

> participant's or beneficiary's benefit entitlement under an employee
> benefit plan would constitute an instrument under which the plan is
> established or operated, regardless of whether such information is
> continued in a document designated as the "plan document." Quoted from
> *Teen Help, Inc. v. Operating Engineers Health and Welfare Trust Fund*,
> 1999 WL 1069756 (N.D. Cal. August 24, 1999).

To this end, it was held in *Crotty v. Cook*, 121 F.3d 541, 547 (9th Cir. 1997) that the penalty provision in 29 U.S.C. §1132(c)(1) applies not only to the documents listed in §1024(b)(4), but to "any information [that the] administrator is required by this title to furnish to a participant." Followed in *Yip v. Little*, 2011 WL 1261314 (C.D.Ca. 4/4/11).

Penalties have been assessed in accordance with the cited statutory authority in the following cases: *Auerbach v. Kanor-Curley Pediatric Assocs.*, 2004 WL 870702 (E.D.Pa. March, 22, 2004); *Lowe v. McGraw-Hill*, 2004 U.S. App. LEXIS 4815 (7th Cir. March 15, 2004); *Graham v. Pactiv Corp. Benefits Committee*, 301 F. Supp.2d 483 (E.D.Va. 2004); *Kornady v. Cargill, Inc., et al.*, 2003 U.S. Dist. LEXIS 16382 (U.S.Dist.Ct. N.D.Ill. September 18, 2003); *Underwood v. Fluor Daniel Inc.*, 106 F.3d 394 (4th Cir. 1997); *Glocker v. W.R. Grace & Co.*, 19 EBC 2227, 1995 U.S.App. 28224 (4th Cir. 1995); *Law v. Ernst & Young*, 956 F.2d 364 (1st Cir. 1992)(among many others).  One of the larger penalties assessed under this statutory provision occurred in *Gorini v. AMP, Inc.*, 2004 U.S.App. 7460 (3d Cir. 2004) for an award of $160,000.00 in penalties was assessed due to withholding of documents.

As there are many other cases in which these statutory penalties have been awarded, the argument advanced by Defendants that such relief is not legally appropriate is nonsense.  The Defendants only wish to avoid additional liability for these penalties which stems from their overall misconduct in this case.

It is this particular subject of misconduct that the Defendants wish to avoid as the

statutory penalty cases cited state that the amount to be awarded in within the discretion of the Court. *Also See, Hennessy v. Fed. Deposit Ins. Corp.*, 58 F.3d 1995; 29 U.S.C. § 1132(c)(1)(B). Factors considered in making such awards have included: bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made, the documents withheld, and the existence of any prejudice to the participant or beneficiary. *Auerbach v. Kantor-Curley Pediatric* Assocs., 2004 WL 870702 (E.D.Pa. March, 22, 2004) at *6; *Gorini v. AMP, Inc.*, 94 Fed. Appx. 913, 919 - 20 (3rd Cir. 2004); *McDonald v. Pension Plan of the Nysa-Isa Pension Trust Fund*, 320 F.3d 151, 163 (2nd Cir. 2003); *Jackson v. E.J. Brach Corp.*, 937 F.Supp.735, 741 (N.D. Ill. 1996).  The factors of delay and bad faith were only considered in other courts. *Freitag v. Pan Am. World Airways, Inc.*, 702 F.Supp.128 (E.D.Va. 1988); *Bartling v. Freyhauf Corp.*, 29 F.3d 1062, 1066 - 7 (6th Cir. 1994); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 - 9 (1st Cir. 1993); *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d, 328 - 29.  In this case, the delay has been enormous and the Plaintiff has been prejudiced during the administrative appeal process by not having the claims guidelines available to provide additional insight into the insurer's review process to assist her in preparing her administrative appeal.

*Statutory Penalties Have Been Awarded in Many Cases.*

Statutory penalties have been awarded in many cases.  Second Circuit cases include *McDonald v. Pension Plan of the Nysa-Ila Pension Trust Fund,* 320 F.3d 151, 163 (2nd Cir. 2002); *Reid v. Local 966 Pension Fund*, 2004 WL 2072086, (S.D.N.Y. 9/15/04); *Patterson v. Ret. & Pension Plan for Officers & Employees of the N.Y. Dist. Council of Carpenters and Related Orgs.*, 2001 WL 1178670 (S.D.N.Y. 10/5/01); *Proujansky v. Blau*, 2001 WL 963958

(S.D.N.Y. 10/5/01); *Kulchin v. Spear Box Co.*, 451 F.Supp. 306 (S.D.N.Y. 1978).

Third Circuit cases include *Gorini v. AMP, Inc.*, 94 Fed. Appx. 913 (3rd Cir. 2004); *Colarusso v. Transcapital Fiscal Sys.*, 227 F.Supp.2d 243 (D.N.J. 1997); *Boyadjian v. CIGNA Cos.*, 973 F.Supp. 500 (D.N.J. 1997); *Porcellini v. Strassheim Printing Co.*, 578 F.Supp.605 (E.D.Pa. 1983); *Henczel v. Amstar Sugar Corp.*, 1991 WL 53130 (E.D.Pa. 1991); *Conowall v. Admin. Comm. for General Instrument Corp. Pension Plan*, 1989 WL 79800 (E.D.Pa. 7/7/89).

Fourth Circuit cases include: *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996); *Shade v. Panhandle Motor Serv. Corp.*, 1996 WL 386611 (4th Cir. 7/11/96);  *Freitag v. Pan Am. World Airways, Inc.*, 702 F.Supp.128 (E.D.Va. 1988); *Jackson v. Coyne & Delany Co.*, 2004 WL 1381157 (W.D.Va. 6/17/04); *Chaffin v. Nisource, Inc. D/b.a Columbia Gas Transmission Co.*, 703 F.Supp.2d 579 (S.D.W.V. 2010).

Six Circuit cases include *McGrath v. Lockheed Martin Corp.*, 48 Fed. Appx. 543, 550 (6th Cir. 2002);  *Bartling v. Freyhauf Corp.*, 29 F.3d 1062, 1066 - 7 (6th Cir. 1994); *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988); *Dooley v. GMC* , 1997 U.S.Dist.LEXIS 13168 (E.D.Mich. 1997); *Logan v. UniCare Life & Health Ins., Inc.*, 2007 WL 1875943 (E.D. Mich. 6/25/07); *Zirnhelt v. Mich. Consol. Gas Co.*, 2006 WL 3194018 (E.D.Mich. 11/1/06); *Shephard v. O'Quinn*, 2006 U.S.Dist.LEXIS 24252 (E.D.Tenn. 2006).

Seventh Circuit cases include *Blazejweski v. Gibson*, 1999 U.S. Dist.LEXIS 18028 (N.D.Ill. 1999); *Jackson v. E.J. Brach Corp.*, 937 F.Supp.735, 741 (N.D. Ill 1996); *Harsch v. Eisenberg*, 1994 U.S.Dist.LEXIS 21235 (E.D.Wis. 1994); *Villagomez v. AT&T Pension Plan*,

1991 WL 21178 (N.D.Ill. 2/13/91).

Eighth Circuit cases include: *Keogan v. Towers, Perrin, Forster & Crosby, Inc.*, 2003 WL 21058167 (D. Minn. 5/9/03); *Garred v. General American Life Ins. Co.*, 774 F.Supp. 1190 (W.D.Ark. 1991).

Ninth Circuit cases include: *Yip v. Little*, 2011 WL 1261314 (C.D.Ca. 4/4/11);  *Advisory Committee for Stock Ownership & Trust for Employees of Montana Bancsystem, Inc.*, 76 F.3d 384 (9th Cir. 1996), *Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 840 (N.D.Ca. 1990); *Chaganti v. Sun Microsystems*, 2004 WL 3431753; *Berry v. Wise*, 2004 WL 1222238 (D.Or. 6/3/04).

*Dehner v. Kansas City S. Indust., Inc.*, 713 F.Supp. 1397 (D.Kan 1989) supports penalties in the Tenth Circuit with *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990) and *Hamilton v. Mecca, Inc.*, 930 F.Supp.1540 (S.D.Ga. 1996).

*Statutory Penalties Are Available Against a De Facto Administrator.*

Defendants wish for this Court to believe that damages may only be awarded against the designated Plan Administrator.  This is not true.  In fact, the documentation concerning claims guidelines requested by Plaintiff is only possessed by The Hartford and cannot be produced by the Plan Administrator, CVS Corporation.  Therefore, Defendants attempt to use this ruse as a means of avoiding production of pertinent information in ERISA cases.

Under ERISA, a "plan administrator" is the "persons specifically so designated by the terms of the instrument under which the plan is operated."  29 USC § 1002(16)(A).  In this case the plan documents produced (Exhibit A) fail to name any administrator.  But, it is very evident that Reliance undertook administration of the claims process and has acted as a *de facto* plan administrator.  *De Facto* is defined as follows:

> In fact, in deed, actually.  This phrase is used to characterize an officer, a
> government, a past action, or a state of affairs which must be accepted for
> all practical purposes, but is illegal or illegitimate.  Thus, an office,
> position, or status existing under a claim or color of right such a de facto
> corporation.  *Black's Law Dictionary*. (5th ed. 1979).

Insurance companies often act as "plan administrators" under ERISA.  For example, by regulation, decisions and notices regarding ERISA rights are required to be sent by the plan administrator.  29 C.F.R. § 2560.503-1(f), (j).  This information is usually provided to the claimant by the insurance company when they deny a claim, which gives the appearance that the insurance company has taken on the role and attributes of a plan administrator.  This case is no exception where all ERISA mandated notices required to be sent by the plan administrator when denying a claim were sent by the insurer on all occasions when it denied the subject claim. Many courts have deemed insurers *de facto* plan administrators.  *Byrd v. Canadian Imperial Bank of Commerce*, 354 F. Supp.2d 597, 607 (D.S.C. 2005) citing *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001).

§502(c)(1) penalties have been levied against *de facto* plan administrators.  The holding in *Law v. Ernst & Young*, 956 F.2d 364, 373 (1st Cir. 1992) states:

> If, to all appearances, Arthur Young acted as the plan administrator in
> respect to dissemination of information concerning plan benefits, it my
> properly be treated as such for purposes of the liability provided under
> §1132(c).  To be sure, §1002(16)(A)(I) states that the plan administrator is
> the party "specifically so designated" by the plan documents, and those
> documents named Arthur Young Retirement Committee.  But 29 USC §
> 1025 also confers upon plan participants and beneficiaries an absolute
> right to receive from the administrator information of the type sought
> here...
>
> To hold an entity not named as administrator in the plan documents may
> hot be held liable under § 1132(c), even though it actually controls the
> dissemination of plan information, would cut off the remedy Congress
> intended to create.

The key factor expressed in *Law* was control: both control over the plan generally; and specifically, control over dissemination of the information and documents underlying the §502(c)(1) claim.

If a company is administrating a plan , then it can be held liable for ERISA violations regardless of the provisions of the plan document.  *Rosen v. LTW, Inc.*, 979 F.2d 191, 193 - 4 (11th Cir. 1992), *See Also*, *Byars v. The Coca-Cola Co.*, 2004 WL 1595399 (N.D.Ga. March 18, 2004).  The fact that someone other than a statutory administrator could be held liable for penalties has "intuitive appeal."  *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073 (5th Cir. 1990). If company personnel other than the plan administrator routinely assume responsibility for answering requests for plan participants, the actions of those employees may be imputed to the plan administrator.  *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993)

A penalty may be assessed against a plan administrator even though the request for plan documents was directed to the plan administrator's counsel since there was a legal agency between the parties between the parties.  *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1110 (10th Cir. 1994).  This includes a *de facto* plan administrator .  *Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1461 (10th Cir. 1995).

Where the plan administrator has expressly delegated to a third party the performance of certain duties, and participants have been instructed to direct all communications to that degree, arguably the third party assumes responsibility for performing those duties and may be held liable for the failure to do so.  *Palmer v. University Medical Group*, 994 F.Supp. 1221, 1241 (D. Or. 1998) citing *Rosen v. TRW, Inc.*, 979 F.2d 191, 193 - 4 (11th Cir. 1992); *Law v. Ernst & Young*, 956 F.2d 364 , 372 - 3 (1st Cir. 1992); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 - 5 (10th

Cir. 1993).

In this matter, it is very clear that the requested claims and disability duration guidelines could only be disseminated by the claims administrator, Reliance, who had control over them. To argue that a request would need to be made to a plan administrator for production of guidelines solely held by this insurer is specious.  Nonetheless, Plaintiff made the proper request to both the claim and plan administrator in order to be compliant with the statutory requirements. For this reason, Defendants' argument that penalties may only be claim against a plan administrator fails.

Therefore, the Plaintiff seeks penalties from the Plan Administrator and the Claims Administrator, whichever this Court sees fit to sanction.

CONCLUSION

The Defendants have failed to offer any authority which supports their cause for dismissal of the statutory penalties claim.   Whereas, the Plaintiff has set forth voluminous statutory and case authority supporting her claim to statutory penalties.

The authority stated clearly demonstrates that there is a cause of action which is not subject to dismissal.  It is apparent that the Defendants have set forth a form pleading designed to do nothing more than harass the Plaintiff for whom they have already denied disability benefits and further delay proceedings while creating a law firm billing event.  This has been their consistent course of conduct, especially in refusing to acknowledge substantial adverse authority to positions stated in their pleadings.

WHEREFORE, Plaintiff requests that Defendants' Motion for Partial Dismissal of the Complaint be denied.

Respectfully submitted,


_____/s/_____
Scott B. Elkind, Bar 438811
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
P: (301) 495-6665
F: (301) 565-5111
Attorney for Plaintiff