IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| JILL MARCIN | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No: 13-1308 (ABJ) |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY, et al | : |
| | : |
| and | : |
| | : |
| THE MITRE CORPORATION LONG TERM | : |
| DISABILITY INSURANCE PROGRAM, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION TO ESTABLISH CLAIM RECORD AND STANDARD OF REVIEW**

Plaintiff, by and through counsel, hereby sets forth this Motion to Establish Claim and the

Standard of Review, and, in so doing, sets forth the following:

FACTS

*Updated Case History*

This matter is based on a wrongful denial of disability benefits to the Plaintiff, Jill

Marcin, by Reliance Standard Insurance Company under an ERISA-based Plan.  The matter was

originally filed in this Court and captioned as Civil Action No: 10-1816 (ABJ).

Following extensive proceedings, this court issued an Order dated 9/28/12 which made a

series of findings culminating in a remand to the Defendants due to ambiguity in their denial

letters which were based on an Elimination Period resulting in the capability of the Plaintiff

based on a release to work date of 11/2/07 (Subsequently published as *Marcin v. Reliance*

*Standard Ins. Co.*, 895 F.Supp.2d 105, 122 (2012)(Attached hereto as Exhibit 1).  This Court also found that the Defendants did not address obvious questions concerning whether the Plaintiff was considered "Partially Disabled" as defined in the Plan. *Id*. at 122 - 3.  Further, the circular reasoning in the "Residual Disability" provision of the Plan was found to be confusing to the Court as it equated "Partial Disability" during the Elimination Period to "Total Disability." *Id*. at 123.  Based on these findings, this Court remanded the case to the Defendants to reconsider their denial of benefits.

Reliance failed to issue a decision after 90 days and only did so after prompting by this counsel.   The new claim denial dated 1/7/13 (Attached hereto as Exhibit 2) cited the plan provisions for "Total," "Partial," and "Residual Disability."  The denial letter states that Ms. Marcin was capable of a return to work as of a new date, **11/6/07,** and therefore is not eligible for disability under the definitions for "Total" or "Partial" disability.  Reliance provided no explanation as to how it arrived at the new proffered date of onset nor was there any explanation as to why the Plaintiff was not qualified for Residual Disability benefits although the Plaintiff was disabled for more than 24 months.

Also included in the 1/17/13 claim denial was a new vocational review undertaken on 11/1/12 which had never been presented to Plaintiff's counsel prior to the denial and on which the Defendants relied as part of their new denial of the claim.

This counsel filed yet another timely administrative appeal on 6/28/13 which included additional medical, functional capacity, and vocational evidence supporting the disability claim

(Appeal letter attached hereto as Exhibit 3 without additional documentation listed therein)[1].

The Defendants refused to review the appeal as noted in their letter dated 7/24/13 (Attached hereto as Exhibit 4) stating that "their internal guidelines provide for one appeal" regardless of whether the case is ERISA-based.

At this point the Plaintiff filed the instant lawsuit based on the deemed denial.

*Court Findings*

"Actively at Work"

This Court made findings based on the incomplete documentation produced by Defendants concerning the Plaintiff's inability to work.  As part of the initial case, the Defendants set forth Plaintiff's work history as follows:

| Work Week | Total Hours Worked |
| --- | --- |
| 11/12/07 - 11/18/07 | 24 |
| 11/19/07 - 11/25/07 | 17 |
| 11/26/07 - 12/2/07 | 26 |
| 12/3/07 - 12/9/07 | 22 |
| 12/10/07 - 12/16/07 | 29 |
| 12/17/07- 12/23/07 | 28 |
| 12/24/07 - 12/30/07 | 0 |
| Work Week | Total Hours Worked |
| 12/31/07 - 1/6/08 | 2 |

---

[1]Selected documents from the1055 pages of submission have been set forth in the pleading as separate exhibits in order to minimize the filing size.

| | |
|---|---|
| 1/7/08 - 1/13/08 | 28 |
| 1/14/08 - 1/20/08 | 0 |
| 1/21/08 - 1/27/08 | 32 |
| 1/28/07 - 2/3/08 | 24 |
| 2/4/08 - 2/10/08 | 5 |
| 2/11/08 - 2/17/08 | 4 |
| 2/18/08 - 2/24/08 | 0 |

*Id.* at 109

Based on the work hours submitted by Defendants, this Court found that the Plaintiff originally stopped work on 8/20/07 and returned to work as of 11/07.  Thus, she was still within the policy "Elimination Period."  Subsequently, the Plaintiff stopped working completely as of 2/18/08.  Therefore, the Defendant added the number of hours worked by the Plaintiff during her "Interruption Period" to the end of her "Elimination Period" from the above-cited hours.  By this calculation, the Plaintiff had worked the excess of the specified 160 hours as of 12/14/07 with a new "Elimination Period" needing to be re-started effective **12/15/07**.  *Id*. at 109

These findings are incorrect.  This counsel requested and obtained additional leave information from Mitre Corporation (Attached hereto as Exhibit 5).  As it turns out, the Defendant failed to provide complete information concerning the number of credited work hours which include sick, sick bank, and holiday leave.  These additional factors change Plaintiff's credited working hours substantially.  This complete documentation was submitted as part of Plaintiff's administrative appeal dated 6/28/13 (Exhibit 3).

4

| Dates | Scheduled Hours | Sick | Bank | Holiday | Hours Worked |
|---|---|---|---|---|---|
| **2007** | | | | | |
| 10/1 - 8 | 32 | 32 | 0 | 0 | 0 |
| 10/9 - 14 | 32 | 32 | 0 | 0 | 0 |
| 10/15 - 22 | 32 | 32 | 0 | 0 | 0 |
| 10/22 - 28 | 32 | 32 | 0 | 0 | 0 |
| 10/29 - 11/4 | 32 | 32 | 0 | 0 | 0 |
| 11/5 - 11 | 32 | 32 | 0 | 0 | 0 |
| 11/12 - 18 | 32 | 0 | 1 | 7 | 24 |
| 11/19 - 25 | 32 | 8 | 0 | 7 | 17 |
| 11/26 - 12/2 | 40 | 14 | 0 | 0 | 26 |
| 12/3 - 9 | 32 | 10 | 0 | 0 | 22 |
| 12/10 - 16 | 32 | 0 | 3 | 0 | 29 |
| 12/17 - 24 | 32 | 4 | 25 | 0 | 3 |
| 12/25 - 30 | 32 | 0 | 23 | 7 | 2 |
| **2008** | | | | | |
| 12/31 - 1/6 | 32 | 0 | 23 | 7 | 2 |
| 1/7 - 1/13 | 32 | 0 | 4 | 0 | 28 |
| 1/14 - 20 | 40 | 40 | 0 | 0 | 0 |
| 1/21 - 1/27 | 40 | 8 | 0 | 8 | 24 |
| 1/28 - 2/3/08 | 40 | 16 | 0 | 0 | 24 |

5

| Dates | Scheduled Hours | Sick | Bank | Holiday | Hours Worked |
|---|---|---|---|---|---|
| 2/4 - 10 | 40 | 35 | 0 | 0 | 5 |
| 2/11 - 17 | 40 | 36 | 0 | 0 | 4 |
| 2/18 - 24 | 40 | 40 | 0 | 0 | 0 |
| 2/25 - 3/2 | 40 | 40 | 0 | 0 | 0 |
| 3/3 - 9 | 40 | 40 | 0 | 0 | 0 |
| 3/10 - 16 | 40 | 40 | 0 | 0 | 0 |
| 3/17 - 23 | 40 | 40 | 0 | 0 | 0 |
| 3/24 - 30 | 40 | 40 | 0 | 0 | 0 |
| 3/31 - 4/6 | 40 | 40 | 0 | 0 | 0 |
| 4/7 - 13 | 40 | 40 | 0 | 0 | 0 |
| 4/14 - 20 | 40 | 40 | 0 | 0 | 0 |
| 4/21 - 27 | 40 | 40 | 0 | 0 | 0 |

A normal work week under the Plan is defined as 32 hours.  The complete hours as credited by Plaintiff's employer, Mitre Corporation, reveal that she satisfied the 32 hour work week requirement from **10/1/07 through 4/27/08** under the Mitre Salary Continuation Plan. Therefore, Plaintiff's Elimination Period would need to be restarted as of **4/27/08 and not the 12/15/07** date as originally and  improperly determined by the Defendants who failed to set forth the properly credited leave hours.  Further, this also discredits the newly proffered disability date of **11/6/07** advanced in the more recent claim denial letter dated 1/7/13 (Exhibit 2) as the Plaintiff was clearly working on that date and as well as months later.

As the Elimination date runs 180 days, Ms. Marcin is required to prove her continuing

6

disability from **4/27/08 - 9/27/08.**

This corrective information undermines a great deal of the factual basis for this Court's original decision as well as the Defendants' new grounds for denial of this claim.  This information is completely responsive to the new claim denial and should have been considered by the Defendants as part of Plaintiff's administrative appeal.

Supplemental Functional Capacity Evidence

*Functional Capacity Findings*

The crux of Defendants' support for the Plaintiff's functional ability as presented at the oral argument prior to this Court's Decision was that Ms. Marcin had not proven her disability as of 12/15/07.  This position has now been invalidated given the corrected employment information.  The corrected dates for the Claimant to prove her disability are from 4/27/08 - 9/27/08.

Evidence cited in this Court's decision casting doubt or requiring clarification included the Functional Capacity Evaluation (FCE) by Carlos A. Martinez, P.T., dated 10/24/08 (Attached hereto as Exhibit 6) as this date occurred after the originally ruled onset date of 12/15/07.  With the corrected Elimination Period dates ending 9/27/08, these findings are contemporaneous to the period of disability cited and are fully supportive of the Plaintiff's disability.

This finding is supported by current treating vascular and transplant surgeon, Gulherme Costa (who worked alongside original lead physician, Dr. Abu Elmagd) who stated in his Medical and Functional Capacity Assessment dated 5/7/13 that the Plaintiff suffered from the restrictions noted in the FCE dated 10/24/08 during the entirety of the Elimination Period (Attached hereto as Exhibit 7).

Moreover, the second Medical and Functional Capacity Assessment completed by the Plaintiff's initial lead treating vascular and transplant surgeon, Kareem M. Abu-Elmagd, dated 6/11/13 (Attached hereto as Exhibit 8)[2] stated his concurrence with Dr. Costa's findings.  This finding is a clear amendment to Dr. Elmagd's Reliance form completion dated 3/25/08 which caused further confusion as to whether the Plaintiff had been disabled as of the incorrectly cited onset date. *Id.* at 109,116.  With Dr. Elmagd's amended opinion, it is abundantly clear that the Plaintiff was disabled during the Elimination Period as required by the policy terms.  This opinion as well as Dr. Costa's opinions were part of the administrative appeal filed by Plaintiff which Defendants refused to review.

*Neuropsycholgical Testing Findings*

The Claimant underwent another neuropsyschological evaluation conducted by David A. Shostak (Attached hereto as Exhibit 9) which included a comparison of the findings made by the previous evaluation by Carloyn Noel, Ph.D. whose findings also raised areas of doubt for this Court. *Id.* at 118  Following this testing, Dr. Shostak opined:

- More notable difficulty on tasks that were more directly sensitive to executive deficits

- Attention was severely impaired for both auditory and visual information (1%)

- Verbal fluency in the borderline range (10%)

- Mental flexibility of 16% with significant decay in ability to maintain and transform verbally presented information as tasks demands increased

- Dr. Shostak noted parallels between his current and Dr. Noel's previous testing

  - By only slightly altering the cuing on testing, Dr. Shostak demonstrated

---

[2]Exhibits 7 and 8 were included in the administrative appeal filed on 6/28/13.

that Dr. Noel's observation that Ms. Marcin had difficulty tracking and self-monitoring her performance, scoring only a 16th percentile with significant decay as task demands increased

• Dr. Noel also felt that Ms. Marcin suffered from deficits in cognition. In retesting, Dr. Shostak utilized tests which made Ms. Marcin address more than one task at a time where Dr. Noel only utilized two single tasking tests which was insufficient.  The result was a dramatic decrease in ability

• Ms. Marcin consistently scores well in her intellectual capacity, but it is information processing demands which are the cause of her problems, especially when presented with several sources of incoming information and shifting of attention sets

• Dr. Noel is correct that "functional factors" do not account for the pattern of neurocognitive impairment presented

• Ms. Marcin is "truly neuro-cognitively disabled" whose impairments are "truly work disabling"

• She is not able to attain the level of education or occupational function that wold have been characteristic of her adulthood

• She struggles with basic activities of daily living

• She has recurring amnesia lapses

• Findings strongly suggest focal impairments in the hippocampal-amygdala areas

• "Shadowing" Ms. Marcin in a workplace for a day or two would demonstrate these problems in a live situation

Dr. Shostak's findings serve to supplement the findings of Dr. Noel and fully support the Plaintiff's disability claim.  Again, the Defendants refused to review these findings which were submitted with Plaintiff's latest administrative appeal.

*Factual Vagaries*

This Court had cited factual discrepancies which cast doubt on the Plaintiff's claim for disability benefits, especially concerning her ability to attend treatment sessions in Pittsburgh,

Pennsylvania. *Id.* at 110.  Ms. Marcin  has made a series of statements provided with her

administrative appeal which correct any and all areas of misunderstanding or vagary.

The Claimant made several statements as recorded by David Shostak, Ph.D. on 3/6/13

(Exhibit9)  which include:

- Prior to her disability, she was a driven and high functioning employee who received performance awards and was capable of working on several programs at once

- During her attempt to return to work, she suffered from persistent disturbances in concentration and focus including deficits in short term memory that precluded her capacity to remember what was relevant to her work routines and that was producing an abject state of exhaustion after the first few hours of each day

- She could not manage the complexity and demands of her work in spite of its familiarity to her

- She could not divide her attention between parallel task, had difficulty narrowing in on details, and could not sustained her attention with relevant discussion or other information

- She felt weak, unable to complete assignments on time and would neglect assignment unintentionally

- Following her second surgery, she still suffers difficulty following a conversation and watching a television show and maintaining a sense of continuity

- She has difficulty making decisions

- She will miss physician appointments despite being reminded, will forget members of her own family, will neglect completing preparation of a meal once started, will forget why she placed a phone call to someone, forgets to buy items on a shopping list, loads wet clothes into the dryer and forgets to start it, forgets to pay bills or pays bills twice, among many other difficulties

- She suffers from headaches, fatigue and syncopal episodes

The Claimant stated the following on 6/16/13(Exhibit 10)[3]:

_____

[3]Both Exhibits 9 and 10 were included in the administrative appeal filed on 6/28/13.

Prior to my illness, I had found myself becoming very successful as a multisystems engineer with Mitre Corporation and was on a fast track to success. Mitre was offering to pay for me to study for a masters degree and all was going well with my life. I was preparing transition my career path into research. I was well liked by my employer and fellow employees who bent over backwards when I became ill so as to allow me to keep working. On many occasions, I requested help from my supervisor to provide me with assistant to my job although I had done this work by myself with no assistance in the past. While I struggle to work from November, 2007 to mid-February, 2008 while I was ill, I kept falling behind on the many work issues to be resolved. When I was healthy, I had been completely capable of addressing such issues. This was no longer the case. Many times, I had to turn down travel assignments due to my health. I had never refused such opportunities when I was healthy. At work, I could accomplish very little and was feeling miserable. I felt lethargic and unproductive. This made me feel very inadequate. But, I continued to struggle to do anything for as long as I could as I did not want to give up my work life.

My daily symptoms include acute drowsiness and lethargy. I spend most of my day sleeping. This is shared event between my bed and my couch. I suffer from acute gastrointestinal distress for which I make frequent bathroom trips. I suffer from poor memory and confusion. I now have to write myself notes for simple activities which I would never have forgotten in the past. For this purpose, I keep notebooks around the house to serve as my daily reminder pads. My mental fogginess and lack of focus are particularly disturbing given my past mental acuity. I have trouble even performing routine activities (eating, showering, etc.) in my own home.

Since my diagnoses, my life has become difficult and challenging. I have been told my doctors on two occasions that I would probably die during surgery, if I made it surgery to all. To say my conditions are disabling is an understatement. I now call myself a "professional patient." Even when I am feeling somewhat healthier, I need to see my doctors constantly (at least once per week for some routine test at minimum).

My previous provider, Dr. Elmagd left for a new job at the Cleveland Clinic and I have continued my care with his associate Dr. Costa who assisted Dr. Elmagd while he was caring for me in Pittsburgh. On the occasions I need go to Pittsburgh for treatment, my father or my husband drive me to these appointments as I am far too fatigued to do so. On only a couple occasions have I had to drive myself for lack of other

11

assistance.  In doing so, I would have to stop about three times each way for at least a half hour to rest so as to be able to tolerate the trip.

I receive gross amounts of assistance from my husband who does the bulk of the shopping, cooking, laundry, cleaning, yardwork, etc.

I used to paint as a hobby. I can longer do this as I cannot hold even a small paintbrush for extended periods and suffer tremors which have a profound and ugly result on my art work.  I now sleep for extended periods, I get for a little while, try to remember medicines, then go back to sleep again. I have very little interaction with any human beings.

Never in my life did I think I would end up this way.  This was not in the plan. It is my living Hell and there is no enjoyment in it.  I miss being productive and performing a meaningful job that had become a very promising career.  I could only wish that my insurer would take the time to visit or examine me so as to see how awful my situation has become.

These supplemental and corrective statements were ignored by the Defendants as well when they failed to consider the latest administrative appeal filed by the Plaintiff.

*Other Information Submitted with the Administrative Appeal date*

The most recent administrative appeal also included additional information including a large collection of updated medical documentation which support Claimant's ongoing disability, another functional capacity evaluation dated 6/21/11 which documents no functional improvement in the Claimant since her previous testing on 10/24/08,  corrected wage information, a new responsive vocational opinion based on all the evidence of record as well as additional witness statements which described the Plaintiff's low state of functioning.  The Defendants refused to review this documentation as well which was included in the 6/28/13 administrative appeal.

LEGAL ARGUMENT

<u>There is substantial case support concerning the need to remand this case for another administrative appeal.</u>

There are clear precedents in this Court which allow for remand of a an ERISA-based disability case to a plan administrator.  Remand to plan administrators have only been allowed under limited circumstances. This includes when it was unclear what grounds the plan administrator relied upon to deny a claim.  *Marcin v. Reliance Standard Life Ins. Co.*, 895 F.Supp.2d 105 (D.D.C. 2012); *James v. International Painters and Allied Trades Industry Pension Plan*, 710 F.Supp.2d 16, 27 (D.D.C. 2010) citing *Black & Decker v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)(holding that remand for reevaluation of the merits of a claim should occur where there has been misconstruction of the plan); *Doe v. MAMSI Life and Health Insurance Co.*, 471 F.Supp.2d (D.D.C. 2007);  *Fitts v. Unum Life Ins. Co.*, 2006 WL 449299 (D.D.C. 2/23/06)   Remand has been undertaken for recalculation of benefits.  *Kifafi v. Hilton Hotel Retirement Plan*, 826 F.Supp.2d 46 (D.D.C. 2011).  Remand was found to be appropriate relief when a plaintiff filed suit prior to exhaustion of the time period for a plan administrator to consider an administrative appeal.  *White v. Aetna Life Ins. Co.*, 210 F.3d 412 (D.C. Cir. 2000).

At this point, the remand to correct the insurer's position concerning its application of the plan provisions comports with this line of authority.

<u>The Defendants were responsible to undertake another administrative review.</u>

The case law lies inapposite of the Defendants' contention that they were only bound by their internal guidelines.  It was held in *Kroll v. Kaiser Foundation Long Term Disability Plan*, 2012 U.S. Dist. LEXIS 25063 (N.D.Calif. 2/10/12) held that the insurer was responsible for

following the claim procedures enunciated in 29 CFR § 2560-1(f)(3) following a court-ordered remand.

The Court in *Platt v. Walgreen Income Protection Plan for Store Managers*, 2006 WL 3694580 (M.D. Tenn12/14/16) stated that it would expect court ordered remand to be solved according the ERISA-mandated administrative review provisions as set forth in the federal statutes and cases. This leads to the same conclusion as rendered in the *Kroll* court.

In this court, upon remand to the District Court in *Fitts v. Federal National Mortgage Association*, 236 F.3d 1(D.C.Cir. 2001), the parties were allowed to supplement the claim record with this supplementation acknowledged in the following proceeding. *Fitts  v. Federal National Mortgage Association*, 2006 WL 449299 (D.D.C. 2/23/06).

In *Metzger v. Unum Life Insurance Co. of Am.*, 476 F.3d 1161 (10th Cir. 2007), additional materials were submitted to Unum and reviewed by the insurer without argument.

Moreover, the Defendants never produced the guidelines which state that only one administrative appeal is allowed. Pending before this Court is a Motion to Dismiss concerning Plaintiff's claim for statutory penalties. The failure by the Defendants to produce this crucial information on which they place complete reliance upon in refusing to review the recent administrative appeal filed by the Plaintiff illustrates how insurers play "hide the ball" in these cases by refusing to produce pertinent documents as required under ERISA.

The Plaintiff is correct in declaring a deemed denial of the claim.

When the ERISA regulations were revised in 2000, the language about claims being "deemed denied" was deleted. *Previously at* 29 C.F.R.§ 2560.503-(e)(2), (h)(4) (providing that if an ERISA plan does not make a decision with ERISA's time limits "the claim shall be deemed

14

denied."), *Replaced with* 29 C.F.R.§2560.503-l(l)(providing that if a plan fails to follow ERISA's procedural requirements, including its time limits, "a claimant shall be deemed to have exhausted the administrative remedies under the plan and shall be entitled to pursue any available remedies under section 502(a)...on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim").

A claimant is deemed to have exhausted administrative remedies after the plan denies the appeal of an adverse benefit determination or when the plan fails to "establish or follow claims procedures consistent with the requirements of this section."  29 CFR §2560.503-1(l).

The ERISA statute at 29 C.F.R. §2560.503-1(l) makes it clear that where ERISA claim deadlines or procedures are not followed by a plan administrator, a claimant is "deemed to have exhausted administrative remedies available under the plan...[and is] entitled to pursue and available remedies under section 502(a) of the Act."  This remedy includes judicial review under the *de novo* standard of review.

The Fourth Circuit holdings are very instructive.  It was held in *Smith v. Metropolitan Life Ins. Co.*, 274 Fed. Appx. 251, 258 (4th Cir. 2008) that an ERISA claimant denied benefits under the more restrictive "own occupation" standard was not required to exhaust administrative remedies under the less restrictive "any occupation" standard for disability.

Where a plan administrator completely fails to render a decision on a benefits application, it gives a claimant the right to petition the federal courts for redress.  *Patrick v. Calgon Carbon Corp.*, 2010 WL 4629993 at *4 (S.D.W.Va. 11/8/10) citing *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 - 7 (2nd Cir. 2005).  The *Patrick* decision notes that the 4th Circuit had not addressed this question, but looked to *Henson v. Monongahela Power Co.*, 2010 WL 38335070

(S.D.W.Va. 9/29/10) which held that §2560.503-1(l) deemed exhausted administrative remedies where claimants failed to receive any notice or determination regarding a benefits application.  In reaching this holding, it was specifically distinguished that this remedy was only available in cases where a plan administrator failed to act on a benefits determination and not in cases where a claim decision is ultimately made even if untimely.  *Id*. at *5 citing *Tindell v. Tree of Life, Inc.*, 672 F.Supp.2d 1300, 1311 - 12 (M.D.Fla. 2009).   For this reason, this case fits squarely within the *Patrick* holding in that Unum never made a decision concerning Ms. Clarke's entitlement to any occupation benefits.  In this way, the court will not be made to take over a plan administrator's "decision-making role in midstream." *Id.*

There can be no other more positive showing of futility than in this case where the insurer has abjectly failed to issue a decision at all although claiming it had such entitlement approximately a year and half previously, but failed to act.  *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989); *Thomas v. Wells Fargo, Ins. Servs. of W.Va., Inc.*, 2010 WL 3702666 (S.D.W.Va. 9/14/10).

It was specifically held that a denial of short term disability benefits clearly leads to a denial of long term disability benefits which does not warrant further administrative remedies as such would be futile.  *Escobar Galindez v. Ortho Pharmaceuticals*, 328 F. Supp.2d 213, 227 (D.P.R. 2004);  *Young v. UnumProvident*, 2002 Y.S. Dist. LEXIS 16568, 2002 WL 2027285 at *4 (D. Minn. 9/3/02).

A similar argument was raised by the administrator/insurer in *Ward v. Cigna Life Insurance Co. of New York*, 776 F.Supp.2d 155 (W.D.N.C. 2011).  Cigna claimed that its failure to rule on a second administrative appeal permitted a remand for reconsideration

Absent substantial compliance with ERISA deadlines, inaction on a claim is not a valid exercise of discretion and leaves the court without any decision or application to which to defer. *McDowell v. Standard Ins. Co.*, 2008 U.S.Dist.LEXIS 65213 at *32(N.D.Ga. 5/20/08).  Plan administrators cannot be permitted to block or delay a plaintiff's access to federal court.  *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 107 (2nd Cir. 2005).

A claimant may bring a civil action at a time when his claim has been deemed denied just as he may bring an action to challenge an outright denial of benefits.  *University of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846, n.3 (6th Cir. 2000); *Mass. Mutual Life. Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).

The failure to render a timely decision results in the administrator losing discretion and the *de novo* standard of review to be applied.  *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98 (2nd Cir. 2005);  *Jebian v. Hewlett-Packard Retirement Plan for Hourly Employees*, 349 F.3d 1098 (9th Cir. 2002); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d (10th Cir. 2003); *Seman v. FMC Corporation Retirement Plan For Hourly Employees*, 334 F.3d 728 (8th Cir. 2003); *Towner v. Cigna Life Ins. Co. of New York*, 2006 WL 581209, –F.Supp.2d–, (D.Conn. 2006);  *Myers v. Iron Workers District Council of Southern Ohio & Vicinity Pension Trust*, 2005 WP 2979472 (S.D. Ohio November 7, 2005)

A claim is deemed exhausted pursuant to 29 CFR §2560.503-1(l) with failure to follow the time limitations set forth resulting in a deemed denial and the loss of discretion.  *Jebian v. Hewlett Packard Co.*, 310 F.3d 1173 (9th Cir. 2002), withdrawn and replaced by 349 F.3d 1098 (9th Cir. 2003).  An insurer's gross delay in responding to an appeal results in a deemed denial or else plan administrators could indefinitely tie up claims with ongoing requests for claimants who

17

are often in immediate need of benefits. The substantial compliance doctrine cannot delay a claimant's access to the court for this reason. *Nichols v. Prudential Life Ins. Co. of Am.*, 2005 U.S.App.LEXIS 6837 (2d Cir. April 21, 2005).

Failure to follow the established  ERISA guidelines and following reasonable claims procedures shall result in a deemed exhaustion of administrative remedies under the plan and entitlement to pursue and remedy under the Act.  *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 125 S.Ct. 2688 (2005) citing 29 C.F. R. §2560.503-1(l).

Where an insurer continues to deny a claim after two administrative appeals, any future ability to receive a favorable total disability determination is doomed to fail.  *Smith v. Weekly Disability Income Ins. for Employees of Friends of KEXP*.  2010 WL 890068 (W.D.Wash. 3/9/10).

This overwhelming case authority clearly demonstrates that no further remand should be afforded in this case.

<u>The Defendants' conduct in this case mandates a shift in the standard of review.</u>

*Defendants' Conduct Culminating in First Lawsuit.*

ERISA requires that every employee benefit plan must:

> provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the reasons for such denial, written in a manner calculated to be understood by the participant.  29 U.S.C. 1331(l).

In addition, the administrator must provide the claimant with a description of any additional material or information necessary to perfect the claim.  29 CFR. §2560.503-1(g). Further, the administrator must describe the necessary additional material "in a manner

calculated to be understood by the claimant."

In particular, Reliance Standard has been chastised in the past for violating this requirement as set forth in *Taylor v. Reliance Standard Life Ins. Co.*, 2011 WL 3881478 at *11 (W.D.Wash. 9/2/11).

The partial and selective medical review undertaken by Defendants demonstrates their ongoing effort to deny benefits by any means necessary.  It is not the first such occasion as Reliance Standard was criticized for this conduct in  *Taylor v. Reliance Standard Ins. Co.*, 2011 WL 3881478 (W.D.Wash. 9/2/11).  Based on these reasons, the claim denial is not the result of a reasoned and principled decision making process.  Rather, Defendants have taken an unprincipled and irrational course to a predetermined result of benefits denial based on their conflict of interest as both administrator and insurer of the claim.  This conduct should result in lessened deference given to the claims decision.

The cumulative misconduct by Reliance Standard reveals many procedural violations of ERISA.  This type of misconduct has been addressed in *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992) in which a significant procedural error requires that the claims denial be set aside.  Another decision stated that the claim denial should be reviewed under the *de novo* standard of review.  *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003)(both cases cited in *Harper v. Reliance Standard Life Ins. Co.*, 2008 WL 23003175 (N.D.Ill. 5/8/08).

Reliance Standard has been previously admonished for the type of post-hoc justification, similar to that which has occurred in this case, before in *Cyr v. Reliance Standard Ins. Co.*, 2011 WL 3793776 (9th Cir. 8/26/11).

The Defendants have been criticized for their failure to consider evidence supporting a

claimant's disability, including functional capacity testing, and, instead, relied upon a flawed paper medical review. *Kochenderfer v. Reliance Standard Life Ins. Co.*, 2009 WL 47228321 (S.D.Cal. 12/4/09). This conduct is reminiscent to that in the present case and should result in a similar finding against these Defendants.

The conduct in this case differs little from this insurer's conduct in *MacLeod v. Reliance Standard Life Ins. Co.*, 2010 WL 597005 (D.N.H. 2/18/10) which found that the insurer ignored consistent reporting of claimant disability while relying on a peer review which contained mistakes and overlooked significant portions of the medical evidence. As seen in the medical reviews provided, they set forth a summary of findings but do not undertake any analysis of why their naked conclusions are supported over the findings of the actual treatment providers. This is blatant arbitrary and capricious conduct.

The Defendants have been found to conduct insufficient vocational reviews by only naming a hypothetical *DOT* position without any meaningful analysis of material job duties. *Creasy v. Reliance Standard Ins. Co.*, 2008 WL 834380 (E.D.Pa. 3/26/08); *Wirries v. Reliance Standard Ins. Co.,* 247 Fed.Appx. 870 (9th Cir. 2007)

All of these issues were raised in the first round of litigation and remain equally applicable when addressing the standard of review to be assigned in this case.

*Defendants' conduct leading up to the current lawsuit.*

<u>Statutory Support</u>

ERISA requires that every employee benefit plan must undertake a full and fair review. 29 U.S.C. 1331(l). (Cited in full in this Brief on p.18)

An administrator must provide the claimant with a description of any additional material

or information necessary to perfect the claim.  29 CFR. §2560.503-1(g).  Further, the administrator must describe the necessary additional material "in a manner calculated to be understood by the claimant."

These ERISA regulations require that an internal review procedure must be completed within 45 days of receipt of the claimant's request for review by the plan unless the plan administrator determines that special circumstances require an extension of time to perform the claim review. 29 C.F.R. § 2560.503-1(i)(1)(I).  Such extension must be given by written notice prior to termination of the 45 day review period.  29 C.F.R. § 2560.503-1(i)(l)(i).

The failure to establish and follow reasonable claim procedures consistent with the ERISA regulations means that a claimant shall be deemed to have exhausted the administrative remedies available under the plan and hall be entitled to pursue any available remedies under Section 502(a) on the basis those grounds.  29 C.F.R. § 2560.503-1(l).

Reliance has violated all of these regulations by not (1) not conducting a full and fair review by refusing to review the filed administrative appeal despite setting forth a new explanation of the claim denial accompanied by a "sandbagging" vocational review with the claim denial; (2) failing to make a decision within the 45 day time limit (and not requesting a 45 day extension which would have been violated as well); (3) establishing reasonable claim procedures to allow for a second, court-ordered review of the claim, and (4) not informing the Claimant of any additional materials to support her claim which could be submitted to respond to the claim denial.

The Defendants maintain the position that they were only responsible for reviewing the claim in accordance with their own internal guidelines and had no obligation to undertake a

review of the new administrative appeal filed by the Plaintiff.  The Defendants provide no authority for this position other than their semantic argument nor did they produce the actual claim guidelines on which they relied.

As a result of the several violations of the ERISA regulations, a distinct remedy has been recommended by the Secretary of Labor with the consequences of non-compliance with the propounded regulations resulting in evaluation of the claim without judicial deference to the administrator's decision.  The Pension and Welfare Assistance Administration, 65 Fed.Reg. 70246, 70255 - 6 (November 1, 2000).

For these reasons, the Defendants' failure to adhere to the ERISA guidelines and their invented, nonsensical excuse results in their claim decision being given no deference and this matter being decided on the *de novo* standard of review.

Case Law Support

A plan administrator owes beneficiaries a duty of loyalty and a duty to communicate accurately.  *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001).


It has been held that ERISA requires that a claimant be afforded an opportunity for a "full and fair review" by the administrator under ERISA.  *Halpin v. W.W.Grainger*, 962 F.2d 685, 688 - 9 (7th Cir. 1992)(Where a denial letter lacked a description of additional material or information necessary to perfect a claim or an explanation of why such material was necessary).

> Put simply, "what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.  If benefits are denied in whole or in part, the reason for the denial must be stated in a reasonably clear language, with specific reference to the plan provisions that form the basis for the denial." *United States v. Tinker*, 566 F.Supp.2d

22

1158, 1163 - 4 (Cal. 2008), citing 29 U.S.C. 1133(1); quoting 29 C.F.R. 2560.503-1(f) and *Booton v. Lockheed Medical Ben. Plan*, 110 F.3d 1461, 1463 )9th Cir. 1997).  The purpose of ERISA's notice requirement is to inform the claimant of what she must do to obtain benefits and enable her to effectively protest a plan's denial of benefits.  *Id*. Citing *Boyd v. Aetna Life Inc. Co.*, 438 F.Supp2d 1134, 1156 (C.D.Cal. 2006); *Juliano v Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 287 (2nd Cir. 2000).

Although plan administrators may believe that they have articulated good reasons for their requests for more records or additional diagnostic tests, from the claimant's perspective these requests are often indistinguishable from pointless stalling.  *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 636 (10th Cir. 2003).

While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own.  An ERISA fiduciary presented with a claim that a little more evidence should provide valid should  seek to get to the truth of the matter. *Id*. at 635.

A claim denial must address evidence favorable to the claimant "thoughtfully and at length."  *Evans v. Eaton Corp.*, 514 F.3d 315, 323 (4th Cir. 2008).

The Defendants improperly produced new medical reviews with their final claim denial. This is not the first occasion Reliance Standard has engaged in this behavior in this case and is a common practice by this insurer.  It was held in *White v. Reliance Stand. Life Ins. Co.*, 2007 WL 187939 (N.D.Ga. January 22, 2007) that an insurer's refusal to allow a claimant to respond to a medical opinion acquired during the pre-suit period was inconsistent with idea of "meaningful dialogue" between the parties and hampered the necessary exchange of information required for a full and fair review.

An administrator is bound by its initial decision and cannot later assert a new rationale as this is "sandbagging" by post-hoc justifications.  *Winebarger v. Liberty Life Assur. Co. of*

*Boston*, 571 F.Supp.2d. 716,726 (W.D.Va. 2008).  An insurer cannot close the record to the

insured but keep it open for itself.  *Russo v. Hartford Life and Accid. Ins. Co.*, 2002 WL

32138296 (S.D.Cal.2/2/02) citing *Killian v. Healthsource Provident Adminstrators, Inc.*, 162

F.3d 514 (6th Cir. 1998); *See Also*,  *Toppins v. The Hartford Life and Accident Ins. Co.*, 657

F.Supp.2d 1107 (W.D. Missouri 9/24/06).

Claimants should not be denied timely and specific explanation concerning disability

benefit denials to which the law entitles them.  This has been held to be no different from the rule

that claimants cannot supplement the administrative record and urge new grounds outside the

record after it closes.  *Flinders v. Workforce Stabilization Plan of Conoco Phillips*, 491 F.3d

1180 (10th Cir. 2007) citing  *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir.

1998).

This doctrine extends to use of medical reviews prepared solely for the last stage of

appeal to be revealed only after the final decision as was done in this case.  *Abram v. Cargill*, 395

F.3d 882 (8th Cir. 2005); *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 (3rd Cir. 2004)(the retention of

a medical review to counter favorable evidence of claimant disability is not being a "disinterested

fiduciary"). *See Also*, *Harris v. Aetna Life Ins. Co.*, 379 F.Supp.2d. 366 (N.D.Ga. 2005).

This extensive case authority again demonstrates the bad faith claims handling by the

Defendants which should result in their being stripped of a deferential standard of review and

having this matter decided under the *de novo* standard of review.

WHEREFORE, Plaintiff requests this Court to:

1. Establish the claim file in this case for litigation of this matter by including the

contents of Plaintiff's administrative appeal documentation following Defendants' last claim

denial dated 1/7/13; and

      2.      Alter the standard of review in this case in accordance with record of

ERISA violations committed by the Defendants.

                          Respectfully submitted,


                          _____/s/_____

                          Scott B. Elkind, Bar 438811

                          Elkind & Shea

                          801 Roeder Rd., Ste. 550

                          Silver Spring, MD 20910

                          P: (301) 495-6665

                          F: (301) 565-5111

                          Attorney for Plaintiff

25