IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| JILL MARCIN | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : Civil Action No: 13-1308 (ABJ) |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY, et al | : |
| | : |
| and | : |
| | : |
| THE MITRE CORPORATION LONG TERM | : |
| DISABILITY INSURANCE PROGRAM, | : |
| | : |
|     Defendants. | : |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO ESTABLISH CLAIM RECORD AND STANDARD OF REVIEW**

Plaintiff, by and through counsel, hereby replies to Defendants' Opposition to Plaintiff's Motion to Establish Claim and the Standard of Review, and, in so doing, sets forth the following:

The Defendants make use of the tactics of deflection and diversion in order to avoid addressing the pertinent issues raised in the Plaintiff's Motion to Establish Claim Record and Standard of Review. At no time do they address the actual factual issues raised as these are incontrovertible and weigh against their interests in deny this claim.

*Date of Disability*

The Plaintiff has raised the pertinent question of why the Defendants' have changed the date of alleged disability onset from 11/2/07 as set forth in this Court's initial decision (10-1816 ABJ) to 11/6/07 in the new denial of disability made dated 1/7/13 (Exhibit 2). This is clearly

stated on page three of the new denial which explicitly states: "It was apparent that as of November 7, 2007, that she was capable of returning to full-time employment."  This is clearly different from the date found by this Court.  How the Defendants can deny this clear language in their Opposition is rather troubling (D Brief, p.4).

Therefore, it was appropriate for Plaintiff to raise the issue in her new appeal dated 7/24/13 (Exhibit 4) which included additional leave information from Mitre Corporation (Exhibit 5) which refutes both dates of disability argued by the Defendants.

The Defendants argue that the Plaintiff has now become disabled after her coverage ended.  This is completely inaccurate as the Mitre leave information clearly establishes many hours of sick, vacation, and sick bank leave which were ignored by the Defendants in their initial determination.  The new dates of disability proffered by the Plaintiff are correct and the Defendant's basis for denial now have been completely undermined as all medical bases cited were based on an incorrect date of disability which now should be **4/27/08**.

The failure by the Defendants to address this factual argument by the Plaintiff's is very telling as it is incontrovertible. The Defendants do not contest the accuracy of the leave record from Mitre.  Therefore, they have conceded its contents.

Instead, the Defendants point to arguments in their past Memorandums which were not embraced by this Court.  This is not the point where Defendants are allowed to relitigate their claim, especially after failing to convince this Court of their positions previously.[1]

*The Elimination Date Proposed by Plaintiff is Entirely Consistent with the Plan.*

Rather than refuting the accuracy of the Plaintiff's Mitre leave record.  Instead, it states

---

[1] In child playground terms, they don't get a "do over" at this point.

that it was "not hiding information." Plaintiff has made no such accusation. Rather, Plaintiff has stated that the Defendants incorrectly determined the disability onset date by failing to consider the correct leave information. The Defendants fail to address the actual dates of leave under the Mitre Salary Continuation Program. Exhibit 5 clearly demonstrates that Ms. Marcin received payment for her service through 4/27/08.

Again, the Defendants continue to deflect rather than address the actual issue. By failing to contest the substance of the leave record, the Defendants have conceded this issue.

Yet, Defendants attempt to obfuscate this issue by pointing out other plan provisions which fail to change the disability onset date.

The **Elimination Period** means a "period of consecutive days of Total Disability for which no benefit is payable." For this Plan, the Elimination Period is 180 days. Again, the Plaintiff under the Mitre Salary Continuation Program ceased work on 4/27/08 with the Elimination Period continuing to 10/26/08 which are dates consistent to those set forth by the Plaintiff.

Instead of addressing this issue, the Defendants attempt to force an inconsistent reading of the Elimination Period for which they gave no credit to any salary continuation paid by Mitre from 11/12/07 - 4/27/08. The Defendants manufacture their conclusion by misreading the Elimination Period mandate that is calculated from the greater of 180 consecutive days or the end of the Mitre Corporation salary continuation program. It is clear from the leave record that Ms. Marcin received salary continuation until 4/27/08. Again, the Defendants do not dispute this fact.

The Plaintiff was clearly disabled by 4/27/08 date as demonstrated by the claim record

evidence submitted with the Plaintiff's administrative appeal dated 7/28/13 (Exhibit 4).

This clear date of payment to the Plaintiff ending on 4/27/08 is greater than the Elimination Period date of 1/27/08 now offered by the Defendants. **Of course, it cannot be go without saying that this would now be the third, inconsistent date of disability offered by the Defendants at this point.** Therefore, it is very clear that the Defendants' interpretation of the Plan is completely inconsistent and only done in a way to favor a means to deny the Plaintiff's disability claim.

*The Defendants' Insurance Termination Date is Questionable, But Far More Reasonable.*

The Defendants then try another argument addressing what an "Eligible Person" is under the Plan. "Eligible Classes" include all full-time and part-time employees. Ms. Marcin continued to work part-time until 2/17/18 which corresponds to expiration of coverage on **3/18/08**. This is a better fit, but again now constitutes a **FOURTH** alternative date of disability offered by the Defendants.

Defendants' position is contradicted by two other plan provisions for "Actively at Work" and "Sickness" which are defined as:

> "Actively at Work" and "Active Work" mean actually performing on a Full-time or Part-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes **approved time off** such as vacation, jury duty, and funereal leave, but does not include time as a result of an Injury or Sickness."
>
> "Sickness" means illness or disease **causing Total Disability** which begins while insurance coverage is in effect for the Insured. Sickness includes pregnancy, childbirth, miscarriage, or abortion, or any complication therefrom. (Emphasis added in both definitions)

Based on these provisions, the Plaintiff remains insured during her entire period of

employment unlike the incorrect assertion made by Defendants in their Opposition Brief (p.8).

The Plaintiff's disability is supported by either date of 3/18/08 or 4/27/08 by her treating physicians, the functional capacity evaluations, and the enhanced neuropsychological testing (Cumulatively, Exhibits 6 - 9) which, again, demonstrates why the new documentation is necessary responsive material to the Defendants' new claim denial (including the new post-hoc rationalizations offered in their Brief).

In either event, the Plaintiff is satisfied with either the 3/18/08 or 4/17/08 date which differ greatly from the other three dates offered by the Defendants.

Again, the new employment evidence is absolutely necessary for the determination of the date of onset which, in turn, determines whether the Plaintiff is disabled.  The disability finding is buttressed by the additional medical, functional capacity, and vocational evidence submitted with Plaintiff's new administrative appeal dated 7/24/13.  No matter what, the documents are clearly responsive to the Defendants' new denial which included new vocational evidence in addition to the change in date of disability alleged.

Based on these factual issues, the new documentation presented with the Plaintiff's new administrative appeal must be made part of the claim record before this Court.

*The Pertinent Plan is Ambiguous in Many Respects.*

The law is very clear when concerning plan documents which are unclear in nature.

Should the plan be deemed ambiguous in any way, the doctrine of *contra preferentum* will be applied which requires that the terms of the contract be interpreted against, the drafter. *Fitts v. Unum Life Ins. Co. of Am.*, 2007 WL1339474 (D.D.C. 5/7/07); *Germany v. Operating Eng'rs Trust Fund*, 789 F. Supp. 1165, 1170 (D.D.C. 1992).  If policy language is determined to


be ambiguous or otherwise susceptible of more than one meaning, the court's duty is to apply the plain meaning of words and phrases used to facts before it and is without any authority to rewrite the policy or add meaning to it that is not there. *Cary Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548 (D.C.Cir. 1991). For this reason, Plaintiff's commonsense interpretation of the Plan should prevail.

The Plaintiff's reading of the Elimination Period is reasonable and understandable whereas the Defendants offer a very confusing version which completely ignores the Mitre's leave record for the Plaintiff. Therefore, the Plaintiff's version should be embraced by this Court and the evidence is required to clarify the date of disability. The additional documents produced with Plaintiff's new administrative appeal clarify the onset of her disability even further.

Section 1104(a)(1)(D) of ERISA mandates that plan administrators act "in accordance with the documents and instruments governing the plan."

An administrator's discretion never includes the authority to "read out" unambiguous plan provisions, and, to do so constitutes and abuse of discretion. *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007); *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005).

An ERISA administrator abuses its discretion when it construes provisions in a way that conflicts with plain language of the plan. *Boyd v. Bert Belle/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173 (9th Cir. 2005); *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294 (5th Cir. 1995).

There is no question that the Defendants are abusing their discretion given the multiple, varying and contradictory interpretations of the Plan document set forth in their pleadings.

Given the ambiguous nature of the many interlocking and contradictory plan provisions as argued by the Defendants, the simpler and more commonsense version advanced by the Plaintiff should be embraced by this Court under the doctrine of *contra proferentum.*

*New Vocational Evidence*

The Defendants attached a new vocational report as part of their claim denial dated 1/17/13 (Exhibit 2). The Defendants do not deny this charge in their Opposition and concede this point.

It is incredible that Defendants would suggest that they could rely on this report without producing it to the Plaintiff in the first place. It is this type of "sandbagging" behavior which has been demonstrated all along, yet not as brazenly as it has been done here (See D Brf., p. 15).

Such a stance lies in apposition of the ERISA statute which requires that every employee benefit plan must:

> provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the reasons for such denial, written in a manner calculated to be understood by the participant. 29 U.S.C. 1331(l).

Again, when this Court ordered a new administrative process, the Defendants do not escape the basic ERISA-based requirements for handling an administrative appeal.

The case authority presented by Defendants for denying the claim evidence is based on denials **following** an administrative appeal. In this case, the administrative appeal was ignored by the Defendants who somehow feel that they could hide new evidence for a new denial of the claim. This is not the law and cases cited by the Defendants are not applicable to these circumstances.

The ERISA regulations also require that a claimant receive a "full and fair" review by having the claimant informed of all reasons for the claim denial and having the opportunity to rebut the basis for denial. 29 U.S.C. §1133 (29 C.F.R. §2560.503 - 1). The Defendants consistently state that the Plaintiff does not have the "opportunity to rebut the basis for denial." Plaintiff's plain reading of the statute proves that just the opposite is mandated.

In fact, the use of new evidence is in contradiction to this Court's Remand Order for Defendants' "consideration of plaintiff's claim consistent with the accompanying Memorandum Order." Nowhere in this Order did it state that the Defendants' were permitted to add new evidence to the claim record and change the date of disability as found by this Court. Further, the Defendants failed to clarify whether the Plaintiff qualified under "Partial Disability" benefits as set forth in this Court's Order. Therefore, it is clear that the Defendants have selectively interpreted this Court's Order to their advantage only.

*Plaintiff Has Not Changed the Nature of Her Disability Claim*.

Plaintiff has consistently claimed to have been disabled in accordance with the Plan terms. Rather, it is the Defendants who continue to change their position as to how the date of disability is determined. For this reason, Plaintiff needed to respond in her appeal dated 7/24/13 (Exhibit 4) and include the complete Mitre leave information which was not correctly considered by the Defendants in their new assessment. The Plaintiff has merely corrected the Defendants' new and incorrect statement concerning the disability onset. Moreover, the Plaintiff has responded with additional medical, functional capacity, and vocational evidence (Exhibits 6 - 9) which both buttress Plaintiff's disability in accordance with her correctly determined date of disability and in response to the new vocational report produced by the Defendants in their most

recent claim denial.

Defendants' hyperbolic assertions, that Plaintiff is trying to "re-do" her claim is nonsense. In fact, as a result of the Defendants' own conduct in advancing new reasons for denying the disability claim in terms of both a new date of onset and including new vocational evidence, they have opened themselves to the administrative process which allows the Plaintiff to respond.

To this end, the Defendants produce no clear contrary authority on seek to rely on such cases as *Leavan v. Philip Morris USA, Inc.*, 2006 U.S. Dist. LEXIS 36988 (M.D.N.C. 6/6/06) which also supports Plaintiff's position that the ERISA regulations apply to remands (thus allowing a full administrative appeal process as Plaintiff has undertaken and Defendants have refused).

Instead, the Defendants rely on a rhetorical, semantic argument that this Court "did not order Reliance Standard to provide Plaintiff with an appeal from its decision." (D Brf., p. 11). Rather, than seeking clarification from this Court, the Defendants merely presume a position to their favor.  Whereas, the Plaintiff has followed the ERISA-based administrative scheme which clearly set forth by both statute and case law authority.

Moreover, the Defendants were instructed by this Court to discuss how the definition of "Partial Disability" affected the claim which Defendants neglected in its entirety.  Since this fact was avoided again by the Defendants, this point is conceded as well.  This stance again reveals the inconsistent reading of this Court's Order by the Defendants and serves to undermine their poorly based reasoning for failing to address the administrative appeal in this case.

*The Standard of Review Should Be Altered.*

The Defendants again fail to cite any responsive authority to the extensive legal authority

9

offered by Plaintiff. Rather, they seek to distinguish cases without discussing the crux of the argument.

Defendants do not deny that they were late in making their administrative decision. The Defendants further do not deny that the only reason they finally set forth a denial was only after prodding by Plaintiff's counsel. Therefore, these facts are conceded.

Further, arguing that the many other cases do not "relate" to this case as this is a remand is utter nonsense. This Court reset the administrative process and the Defendants were responsible for following it. Instead of undertaking their owed duty under ERISA, the Defendants allowed the case to languish and now are subject to penalty for their wrongful conduct resulting in a modification of the standard of review.

Based on the clear reasoning and extensive authority cited by Plaintiff in her Motion (pp.18 - 22), it is clear that the *de novo* standard of review should be applied in this case.

*Defendants Concede That a Deemed Denial Has Occurred.*

Plaintiff's initial Motion contained an extensive recitation of law (pp. 14 - 18) which supports that the Defendants' failure to review her administrative results in a deemed denial of the claim and places all issues before this Court.

As Defendants failed to rebut this assertion in any way, they have now conceded this point and cannot request yet another remand of the claim to undertake another administrative review.

CONCLUSION

The Defendants continue to make unsupported semantic arguments which do not change the basis tenets of ERISA. Once this case was remanded, the case law is clear that a new

administrative review process was to be undertaken. The Defendants have offered no authority to contradict this simple proposition.

Therefore, as part of the administrative review, the Plaintiff produced new leave, medical, functional capacity, and vocational information which should all be made part of the claim record.

As no other administrative review is permitted due to Defendants' deemed denial, this case is appropriate for judicial determination with Plaintiff's supplemental responsive documents to be made part of the record.

On the other hand, the Defendants' interpretation of this Court's Order is extremely troubling in that they wish to assert that their new consideration of the claim allows them to (1) change the date of disability onset, (2) add new vocational evidence, (3) ignore this Court's Order to explain the "Partial Disability" plan provision, and (4) prevent the Plaintiff from rebutting the new reasons for claim denial advanced. These positions are not supported by any ERISA statutory or case authority.

The Plaintiff has asked for nothing more than the opportunity to respond to the new reasons for claim denial advanced by the Defendants.

The Defendants' untimely and unsupported denial of this opportunity is clear evidence that the do not wish to afford the Plaintiff the "full and fair" claim review required under ERISA.

Based on the clear reasoning in Plaintiff's Motion and clearly irrational and contradictory arguments made by the Defendants in their Opposition, Plaintiff's new responsive information should be made part of the claim record and the standard of review should be altered to the *de novo* standard due to Defendants' clear misconduct.

Respectfully submitted,

_____/s/_____
Scott B. Elkind, Bar 10810
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
P: (301) 495-6665
F: (301) 565-5111
Attorney for Plaintiff

12