IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| JILL MARCIN | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | : Civil Action No: 13-1308 (ABJ) |
| | : |
| RELIANCE STANDARD LIFE | : |
| INSURANCE COMPANY | : |
| | : |
| and | : |
| | : |
| THE MITRE CORPORATION LONG TERM | : |
| DISABILITY INSURANCE PROGRAM, | : |
| | : |
|     Defendants. | : |

## PLAINTIFF'S CROSS REPLY FOR SUMMARY JUDGMENT

Plaintiff, Jill Marcin, by and through her counsel hereby files this Cross Reply for

Summary Judgment, in this matter, and, in doing so, states the following:

The Defendants continue to rail again and again that the prior decision was correct.

Unfortunately, they continue to refuse to address the new evidence of record submitted with Ms.

Marcin's appeal dated  6/28/13 (Letter at M2 1290 - 1377).  Their refusal to address this

evidence as set forth in their 7/24/13 letter (M4502) now comes back to haunt them.

**ARGUMENTS**

<u>The Defendants' Arguments Concerning the Unavailability of a New Administrative Appeal by
Ms. Marcin Are Unsupported.</u>

The case law lies inapposite of the Defendants' contention that they were only bound by

their internal guidelines and refused to acknowledge the new appeal filed by Ms. Marcin

following their claim denial, which included a new vocational report on which they relied upon

1

to deny benefits to Ms. Marcin, following this Court's remand order.  It was held in *Kroll v. Kaiser Foundation Long Term Disability Plan*, 2012 U.S. Dist. LEXIS 25063 (N.D.Calif. 2/10/12) held that the insurer was responsible for following the claim procedures enunciated in 29 CFR § 2560-1(f)(3) following a court-ordered remand.

The Court in *Platt v. Walgreen Income Protection Plan for Store Managers*, 2006 WL 3694580 (M.D. Tenn12/14/16) stated that it would expect court ordered remand to be solved according the ERISA-mandated administrative review provisions as set forth in the federal statutes and cases.  This leads to the same conclusion as rendered in the *Kroll* court.

In this court, upon remand to the District Court in *Fitts v. Federal National Mortgage Association*, 236 F.3d 1(D.C.Cir. 2001), the parties were allowed to supplement the claim record with this supplementation acknowledged in the following proceeding.  *Fitts  v. Federal National Mortgage Association*, 2006 WL 449299 (D.D.C. 2/23/06).

In *Metzger v. Unum Life Insurance Co. of Am.*, 476 F.3d 1161 (10th Cir. 2007), additional materials were submitted to Unum and reviewed by the insurer without argument.

The Defendants have offered no authority to oppose this unanimity of opinion that Ms. Marcin has the right to file a new administrative appeal following the new denial by Defendants resulting from this Court's remand.

Plaintiff's Argument Concerning the Corrected Date of Disability Onset Is Very Clear.

The Defendants adhere to arguments which have been contradicted by Ms. Marcin's work leave documentation submitted with her second administrative appeal  (M2 211 - 5) which the

Defendants failed to produce.[1]  The Defendants misrepresent that Ms. Marcin only "touches upon" this subject.  In her Opposition Brief, Ms. Marcin recites throughout pages 2 - 5 and the entirety of Exhibit 1 why the date of disability in this Court's initial decision was incorrect and is corrected by the new work leave record evidence.  Exhibit 1 clearly demonstrates how the Defendants failed to credit Ms. Marcin with leave which extended her date of disability onset.

The calculation of the corrected onset date and elimination period is very straightforward. Ms. Marcin's normal work week was defined as 32 hours (M2 141).  Ms. Marcin's **credited work hours** for Mitre Corporation reveal that she satisfied the 32 hour work week requirement from **10/1/07 through 4/27/08** under the Mitre Salary Continuation Plan (See Exhibit 1 for the complete recitation of leave not credited to Ms. Marcin by the Defendants).  When taking into account the previously uncredited leave, Ms. Marcin's Elimination Period should be reset to **4/27/08 - 9/27/08** during which she is required to prove her disability. Whereas, the Defendants maintain that the original **12/15/07** date of disability is operative  as they continue to ignore Ms. Marcin's credited leave hours.  The corrected leave record makes it clear that Ms. Marcin was working on the 11/2/07 date as well as months later.

The Defendants fail to contradict this clear evidence of record and thus concede the new date of disability and the corrected Elimination Period.  Solely stating that the prior, incorrect determined date does not serve as substantial, contradictory evidence for this purpose.

Most noticeably, the Defendants offer **NO** explanation as to why they failed to produce the correct leave information for Ms. Marcin.  This silence speaks volumes.  Rather than address

---

[1]This counsel has been practicing in this area of law for 20 years and has never had to make an inquiry to an employer to acquire corrective work leave information.

this failing, the Defendant cling to their original, fully contradicted position.

The Medical Evidence of Record Clearly Establishes Ms. Marcin's Entitlement to Benefits.

The Defendants incorrectly argue that Ms. Marcin did not satisfy her test of disability during the proffered Elimination Period from 4/27/08 - 9/27/08.  This is nonsense.  Again, the Defendants cling to the previous incorrect date of disability in their attempt to refute this.

Ms. Marcin offers voluminous evidence which demonstrates her disability during the corrected elimination period and continuing. The majority of this evidence is uncontradicted by the Defendants and conceded, which includes:

- **Seven** repeat endoscopies have revealing varices caused by portal hypertensive gastrophy/duodenopathy during the 1/2/07 - 3/26/13 period
- **Seven** repeat CT scans during the 3/15/07 through 2/3/10 revealing continuing portal and splenic venous thrombosis, multiple lesions and varice, and splenomegaly
- A sleep study on 6/17/08 revealing delayed onset sleep
- Non-epileptic seizures from 10/6/08 - 10/8/08 requiring hospitalization and causing slowed movement, fatigue, interruptions in cognitive status, and sleep disturbance
- Photography graphically illustrating the after effects of Ms. Marcin's life-saving shunting procedures to address her portal vein hypertension
- The records from treating oncologist Anthony Felice diagnosing Ms. Marcin with portal vein hypertension with thrombosis, status post shunt procedure, renal carcinoma, Facotre V Leiden mutation causing hypercoagulability, and pancytopenia secondary to splenomegaly from 2/29/07 - 4/29/13  which record her fatigue, syncope, and chronically ill appearanc
- Ms. Marcin's receiving 5 doses of IV Venofer during a hospitalization due to clogging of her shunt
- Treating hematologist/transplant doctor, Kareem M.Abu-Elmagd reporting that Ms. Marcin was suffering from diarrhea three times a week, low grade fevers, fatigue, lethargy, and sudden muscle weakness from 3/20/08 to 5/22/08
- Hospitalization at the University of Pittsburgh Medical Center (UPMC) from 10/6/08 - 10/9/08 due to severe fatigue to the extent of being unable to move or talk, and urinating in bed.
- Pancytopenia was confirmed during by bone scan and blood test on 7/10/09
- Emergency hospitalization at Reston Hospital Center for an upper gastrointestinal bleed as a result of her conditions from 9/6/11 - 9/10/11

4

- Arteriograms on 9/29/11 revealing occlusion of the extrahepatic portal vein with enlarged coronary vein and extensive gastric and esophageal varices.
- Surgical repair of bleeding varices on 11/8/11
- Confirmation of Ms. Marcin's conditions by current treating hematologist/transplant surgeon, Dr. Costa, which includes portal vein hypertension, pancytopenia, history of early stage renal cell carcinoma and factor V Leiden on 12/30/11 and 2/21/13
- Venogram of Ms. Marcin's shunt on 2/21/13 revealing moderate focal narrowing which required emergency treatment including a balloon angiography to reopen.
- Arteriovenous scan on 4/23/13 revealing continued splenomegaly
- Taking of several potent medications including neupogen, levaquin, warfarin, phenazopyridine, nitrofurant, lunesta, hydrocodone, avelox which result in side effects of medications include dizziness, fainting, fever, confusion, headache, weakness, lightheadedness, among others
- Extensive medical literature documenting the severe, disabling, and potentially fatal nature of Ms. Marcin's medical conditions
- Dr. Abu-Elmagd took Ms. Marcin off work on 3/20/08 until further notice with her recovery remained unknown as of 8/25/08
- Treating oncologist/hematologist, Anthony J. Felice's reports dated 4/14/08 and 2/29/08 noting persistent fatigue which has prevented her from working
- The findings from neuropsychologist Carolyn Nöel, Psy.D. on 1/26/09 revealing, frequently required repetition of instruction on multi-step tasks, Needing brief breaks during testing with decreasing energy as testing progressed, significant differences between verbal and nonverbal abilities, reduced motor control and dexterity, impaired ability to concentrate, significant deterioration in ability to hold and manipulate auditory information with increasing task speed, and executive function dysfunction negatively impacting Ms. Marcin's performance in several areas of cognitive functioning
- The neuropsyschological evaluation David A. Shostak, Ph.D., found increased difficulty on tasks that were more directly sensitive to executive deficits, severely impaired attention, poor verbal fluency and mental flexibility, dramatic decrease in cognition when additional tests were conducted, difficulty processing information, recurring amnesia lapses, and struggles with daily activities
- **Two** functional capacity evaluations on 10/24/08 and 6/2/11 which revealed (Report at M2 2065 - 71, C.V. at M2 2078 - 80) which revealed the following unsustainable ability to perform sedentary work, deficits including sustaining activities for more than short periods of time, below part-time workplace tolerance (below 4 hours per day), No symptom magnification, inability to participate in repetitive sustainable activities with work subject to interruption, and need for 4.5 hour nap following testing
- A Medical and Functional Capacity Assessment completed by Janice E. Ragland, MD dated 5/10/10 states that Ms. Marcin experiences colitis attacks and must be in close proximity to a bathroom, can sit/stand/walk a total of 3 hours per day,

cannot lift 10lbs or more, requires three or more hours of rest during daytime hours (with at least one two hour period) during which she would need to lie down, suffers a loss of productivity of 36% or more, is unable to maintain necessary time at work station or work attendance, concurs with first FCE

- Treating oncologic surgeon Kareem Abu-Elmagd in his answers to the Medical and Functional Capacity Assessment dated 5/10/10 (M2 972 - 87) based on his **entire course of treatment of Ms. Marcin** stated she was able walk/stand/sit for less than 30 minutes on a continuous basis, able to lift 10lbs. on an intermittent basis (a few times, but not consistently, fatigue requiring three or more hours in an eight hour work period in 2 one and a half hour periods, reduction in productivity of 36% or more, unable to maintain necessary time at work station or work attendance, concurs with 1st FCE findings, has risks for Severe risk of future blood clots, liver failure organ transplant, major bleeding event, and cancer recurrence, can only sit for only 31 - 60 minutes until moderate to severe risk of blood clot formation, subject to symptom exacerbation by stress, subject to many workplace conditions as hazards due to her health conditions

- Current treating transplant surgeon, Guilherme Costa, who has assisted Dr. Elmagd at the commencement of Ms. Marcin's care, completed a Medical and Functional Capacity Assessment dated 5/7/13 **based on his entire course of treatment** and a second such assessment on 5/23/13 found standing/walking/sitting for 30 - 60 minutes continuously without ability to alternate between sitting and standing due to risk of clotting, total sitting of only 3 hours over the course of an eight hour day, walking limited to 1 - 2 blocks due to fatigue with rest of over one hour until able to perform the same, need to elevate leg to hip height due to fatigue and risk of blood clot

- Lifting up to 15lbs on an intermittent basis only (able to do a few times, but not consistently, at very high risk for clotting and bleeding, requires two daily 1.5 hour rest periods during which she would need to lie down or recline **and** results in a reduction of productivity of 36% or more (in terms of deficits in sustaining concentration, attention, focus, persistence and pace), unable to sustain workplace attendance or work station presence, and concurs with the FCE dated10/24/08

- Dr. Elmagd reviewed Dr. Costa's finding and expressed his concurrence on 6/11/13

The Defendants have not challenged these many findings which demonstrate Ms. Marcin's disability and only point to paper reviews which do not address the entire claim record since the Defendants refused to review the second appeal filed by Ms. Marcin. Therefore, the prior opinions rendered by Drs. Shipko and Dean are substantially incomplete and do not constitute substantial evidence for the purpose of denying Ms. Marcin's long term disability

6

benefits claim.

Further, the opinions from the treating physicians reveal that Ms. Marcin was disabled throughout **their course of treatment** which includes the disability onset date advanced by the Defendants.  Either way, it is incontrovertible that Ms. Marcin is disabled in accordance with Plan terms.

Reliance Never Considered If Ms. Marcin Was Partially, Residually, or Recuurently Disabled.

By  ignoring the new work leave record evidence and sticking to their original position in this case, the Defendants failed to properly consider whether Ms. Marcin was partially or residually disabled.   Ms. Marcin  initially stopped working on 8/20/07.  She attempted to return to work on 11/6/07, but never completed a full week's work from 10/1/07 - 4/27/08 for the 32 hour or 40 hour work weeks scheduled.  The majority of these weeks, Ms. Marcin  performed no work whatsoever.  In reviewing the pertinent policy definition, Ms. Marcin was required to be disabled for a period in which she satisfies a 180 day Elimination Period during which she did not work for a minimum of 160 hours as part so as to be entitled to Partial Disability coverage. From her return to work on 11/6/07 to the period of 11/26 - 12/2 (date of 11/31/08 selected as interim date), Ms. Marcin satisfied the definition of partial disability.  Thereafter, she satisfies the definition of Total Disability as of 12/1/08.

Ms. Marcin may also satisfy the definition of "Recurrent Disability" (M2 45) which states that where an insured returns to work for less than 6 months as a result of the same or related cause, then this period will be considered as Total Disability.

The Defendants failure to address this evidence leads to their conceding this argument and Ms. Marcin should be paid partial disability benefits for the pertinent period.

<u>The Defendants Raise New, Impermissible Arguments in Their Reply Brief.</u>

The Defendants raise the argument that Ms. Marcin was not insured by the policy during the new onset and elimination dates.

The law on raising new arguments after the administrative review period has closed is very clear.  Post-hoc rationalizations during litigation are impermissible.  *Allied Pilots Ass'n v. Pension Benefit Guaranty Corp.*, 334 F.3d 93 (D.C. Cir. 2003); *King v. Liberty Life Assur. Co. of Boston*, 806 F.Supp.2d 25, 31 (D.C.Dist 2011) citing *Ohio & Mississippi Railway Co. v. McCarthy*, 96 U.S. 258, 267 - 8, 24 L.Ed. 693 (1877)(impermissible to "mend the hold" during litigation).

29 USC § 133, ERISA §503, mandates a Plan Participant who has been denied benefits under the plan is entitled a "full and fair review by the appropriate named fiduciary of the decision denying the claim." *Weaver v. Phoenix Home Life Mutual Ins. Co.*, 990 F.2d 154 (4th Cir. 1993).  The process is explained in detail in 29 CFR §2560-503-1.  The premise for the entire process was explained in *Glista v. Unum*, 378 F.3d 113 (1st Cir. 2004) which reiterated that specific reasons for a benefit decision must be given to a claimant at the time of the initial benefit decision.  *See Also*, *Doyle v. Nationwide Ins. Cos. & Affiliateds Employee Health Care Plan*, 240 F.Supp.2d 328, 347 (E.D.Pa. 2003).

An administrator is bound by its initial decision and cannot later assert a new rationale as this is "sandbagging" by post-hoc justifications.  *Winebarger v. Liberty Life Assur. Co. of Boston*, 2008 U.S.Dist.LEXIS 62574 at *16, n.6 (W.D.Va. 8/15/08).  Similarly, a new ground for termination not asserted in the original claim determination is a violation of ERISA and will not be remanded back to the insurer so that it may have "a second chance to litigate [the] issue."

*Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230 (4th Cir. 2008), 129 S.Ct. 2735 (2009), *cert. denied*  Further, additional rationale for denial of a claim offered by a plan administrator for the first time in its denial will not be considered by the court.  *Hall v. Metropolitan Life Ins. Co.*, 2007 WL 45553952 (4th Cir. 2007)(unpublished).

It has been held that once the administrative process has been completed that new grounds for denying disability are not permitted to be raised.  *Jebian v. Hewlett-Packard Co.*, 349 F.3d 1098 (9th Cir. 2003);   *Marolt v. Alliant Techsystems*, 146 F.3d 617, 620 (8th Cir. 1998). Otherwise, the claimant could be "sandbagged" by rationale not set forth by the claims administrator.  *Conley v. Pitney Bowes*, 176 F.3d 1044 (8th Cir. 1999).  For this reason, a court may not defer to *post hoc* rationales for denying benefits generated for the purpose of litigation. *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839 (6th Cir. 2000);  *Munsen v. Wellmark, Inc.*, 257 F.Supp.2d 1172, 1799 (N.D. Iowa 2003); *Edgerton v. CNA Insur. Co.*, 215 F.Supp.2d 541, 548 (E.D. Pa. 2003).

This general premise has been upheld in *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 *1943);  *Am. Trucking Ass'n v. Fed. Highway Admin.*, 51 F.3d 405, 411 (4th Cir. 1995);  *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir. 1990). Similarly, in *Adelson v. GTE Corp.*, 790 F.Supp.1265, 1273 (D.Md. 1992) which stated that "This Court would emasculate ERISA's disclosure requirement if it were to defer to reasons that the Board first identified on appeal in the District Court, years after the decision at the decision at issue." *cited favorable* in *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 397 (5th Cir. 1998).  Further, an administrator cannot introduce evidence *post hoc* to support its benefit determination when the district court reviews that decision under a deferential standard.  *Bernstein v. CapitalCare,*

*Inc.*, 70 F.3d 783, 790 (4th 1995) citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir.

1992); *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1004, 1007 (4th Cir. 1985). Further, a court may not

consider a new reason for denying a claim which was first offered on judicial review. *Thompson*

*v. Life Ins. Co. Of N. Am.*, 2002 U.S.App. LEXIS 3390, *7 (4th Cir.), *See Also, Munsen v.*

*Wellmark, Inc.*, 257 F.Supp.2d 1172, 1200 (N.D.Iowa 2003)[a denial for benefits under an

employee welfare plan subject to ERISA, a court must focus on evidence available to the plan

administrators at the time of their decision and may not admit new evidence or consider post hoc

rationales]; *See Also*, *Pompe v. Cont. Cas. Co. and Hayes Wheels Int'l.*, 119 F.Supp.2d 1004,

1012; *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999); (W.D.Missouri 2000); *Doyle*

*v. Nationwide Insurance Companies & Affiliates Employee Health Care Plan*, 240 F.Supp.2d

328, 347 (E.D.Pa. 2003)[permitting an administrator's post hoc rationale to prevail when a

claimant seeks review in the federal court would undercut ERISA's requirement that

administrators provide "specific reasons" from the outset when denying a claim for benefits. *See*

29 U.S.C. § 1133(1)], *See Also*, *Castle v. Reliance Stand. Life Ins. Co.*, 162 F.Supp.2d 842, 859

(S.D.Ohio 2001); *Edgerton v. CNA Ins. Co.*, 215 F. Supp.2d 541, 548 (E.D.Pa. 2002)[the court

"would not defer to post hoc rationales for denying benefits claims generated for the purpose of

litigation by ERISA plan administrators when those rationales did not appear in the denial

letters..."]; *See Also*, *Carney v. Int'l Bd. Of Elec. Workers Local Union 98 Pension Fund*, 2002

WL1060652 (E.D.Pa. May 23, 2002);*Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 849 (6th Cir.

2000); *Skretvedt v. E.I. Dupont De Nemours and Comp.*, 268 F.3d 167, 178 (3rd Cir. 2001)

*McCoy v. Federal Ins. Co. & Employees Welfare Benefit Plan of Battelle Memorial Institute*, 7 F.

Supp.2d 1134 (E.D.Wa. 1998) [Plan cannot assert on judicial review a reason for denial that was

not contained in the administrator's decision to decline benefits, citing, *Friends of the Coast For v. U.S. Dept. Of the Interior*, 110 F.3d 53, 55 (9th Cir. 1997)[held: administrators are bound by the reasons stated in their denial letter and thus are "precluded from conjuring up new reasons for their denial on judicial review"]; *Caldwell v. Life Ins. Co. Of N. Am.*, 37 F. Supp.2d 1254, 1257 (D. Kan. 1998)[courts are discouraged from relying on...the post hoc rationalizations of counsel], *See Also, Brooks v. The Guardian Life Ins. Co. Of Am.*, 995 F. Supp. 1174, 1177 (1998); *Donaho v. FMC Corp.*, 74 F.3d 894, 901 (8th Cir. 1996).

Notwithstanding the long line of authority precluding Defendant's post-hoc argument, the Defendants ignore their own plan language which demonstrates that Ms. Marcin was actively at work which is defined in the Plan as:

> "Actively at Work" and "Active Work" mean actually performing on a Full-time or Part-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes **approved time off** such as vacation, jury duty, and funereal leave, but does not include time as a result of an Injury or Sickness. (emphasis added)(M2 35)

The Defendants ignore that fact that Ms. Marcin was approved under the Mitre Salary Continuation Plan which paid her salary of $90,000 on 7/26/11(M2 2112), but her salary was increased to $96,000.00 on 5/24/11 (M2 2111) as she was still considered to be "actively at work" as Ms. Marcin received  approved leave due to her illness as defined above.  Her participation in the Salary Continuation Plan was acknowledged by the Defendants in the claim file (M2 208), yet they deny this clear fact at this stage of litigation.  This conduct is unreasonable and untruthful. This mischaracterization of plan terms in this case is reminiscent of similar conduct demonstrated by this insurer in *Boster v. Reliance Standard Ins. Co.*, 959

F.Supp.2d 9 (DC Dist. 2013).

<u>The Defendants Failed to Follow Their Own Claims Guidelines.</u>

Defendants' claim manual contains the following provisions:

**Step Two: Determine the Date of Disability**
Determine the date of disability on which the disability began based on **all of the available information** in the claim record (e.g... Attendance Records)(emphasis added)(C3.3 at M2-13)

**Step Three: Determine when the Elimination Period will be satisfied**
To determine the date on which the Elimination Period (or "Waiting Period") will be (or has been) satisfied, begin with the date of disability and add to the date the number of Elimination Period days as stated in the Policy.  Count the actual days.  Count from date of disability to the date benefits begin. ..
If there are any periods during the Elimination Period in which the claimant returned to Active Work, those days must be included in the determination of the Elimination Period.  Check the applicable policy for any Interruption Period or other provisions which may affect this calculation.

For example:
Elimination Period: 90 days
Date of disability: 3/10/88
Return-to-work: 4/20/88 to 4/24/88 (4 days)
                5/5/88 to 5/7/88 (2 days)
Total RTW days = 6 days
3/1088 to 4/9/88 = 30 days
4/9/88 to 4/20/88 = 11 days
4/24/88 to 5/5/88 = 11 days
5/7/88 to 6/6/88 = 8 days
Total days = 90 days
Benefits begin on 6/14/88.   (M2 14)

The Defendants failed to credit Ms. Marcin with her accredited leave which maintained her "active at work" status far beyond the date they originally claimed.  Therefore, they failed to determine the date of disability correctly in accordance with their own rules.

The Defendants' Arguments Concerning Ms. Marcin's Benefits Ineligibility Are Not Accurate.

The Defendants make an inaccurate argument concerning Ms. Marcin's ineligibility for long term disability benefits.  They cite portions of the plan which are in seeming contradiction to each other. Not only were these arguments not raised until the reply briefing and are thus clearly barred under ERISA, they are not comprehensible so that an ordinary plan participant would be able to understand the Plan.

Plan administrators must provide a condensed and understandable Plan explanation, in the form of a summary plan description, to plan participants.  This summary plan description is required to advise participants, in plan and simple terms, how to obtain coverage and in which instances participants can lose coverage. 29 U.S.C  §§ 1022, 1024(b); *Pettaway v. Teachers and Annuity Assn. of America*, 644 F.3d 427 (DC Cir. 2011). The Defendants failed to provide a summary plan description and the Plan is very dense and contradictory.  Instead of providing any clear explanations in their briefing, the Defendants continue to obfuscate and lay blame on Ms. Marcin for "convoluted" logic which is mandated by the very terms of their Plan.

Should the plan be deemed ambiguous in any way, the doctrine of *contra proferentum* will be applied which requires that the terms of the contract be interpreted against the drafter. *Fitts v. Unum Life Ins. Co. of Am.*, 2007 WL1339474 (D.D.C. 5/7/07);  *Germany v. Operating Eng'rs Trust Fund*, 789 F. Supp. 1165, 1170 (D.D.C. 1992).  If policy language is determined to be ambiguous or otherwise susceptible of more than one meaning, the court's duty is to apply the plain meaning of words and phrases used to facts before it and is without any authority to rewrite the policy or add meaning to it that is not there.  *Cary Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548 (D.C.Cir. 1991).

13

Given the abstruse reasoning utilized by the Defendants filled with ambiguities and post-hoc rationalizations, these arguments should be barred.

<u>The Defendants Have Conceded Several Other Arguments Presented by Ms. Marcin.</u>

The Defendants failed to address the conflict of interest by hiring of paper reviewers, Drs. Shipko and Dean, through UDC and the reviewers histories for making insurer favorable decisions.  Similarly, the Defendants failed to contradict the biased nature of the vocational review undertaken in this case.  In addition, the unethical nature of the review by Dr. Shipko was never contradicted.  Lastly, Ms. Marcin claims that her favorable benefits determination by the Social Security Administration was not given due consideration.  The Defendants failed to address this issue as well.  For these reasons, the Defendants have conceded these arguments, all of which demonstrate arbitrary and capricious claims handling.

CONCLUSION

The Defendants continue to cling to their original position to support their denial in this case despite the new evidence of record which completely undermines their cause.  Instead of undertaking a new review of the evidence as required by this Court, the Defendants decided to ignore this order as well as all the new documentation offered by Ms. Marcin. The proffered documentation reveals that Ms. Marcin has been disabled during **any** date of disability offered while demonstrating that the Defendants withheld  the correct work record from Ms. Marcin and this Court.  The new work record evidence contradicts the Defendants' positions in their entirety. In response, the Defendants rely on improper post-hoc rationalization argument which is clearly precluded.

Instead of advancing these arguments following Ms. Marcin's appeal, the Defendants

chose to ignore the evidence to their detriment.  They cannot have a second bite at the apple at this late stage of litigation. Further, the Defendants make incorrect and confusing arguments in this effort.

The Defendants rely on the medical reviews which fail to address a large portion of the medical record which includes substantial new evidence of Ms. Marcin's disability including new functional capacity testing, neuropsychological evaluations, medical testing, and opinions from all of her treating physicians certifying her disability over the entire course of their treatment.

Based on the entirety of the claim record, it is very clear that Ms. Marcin is entitled to long term disability benefits in accordance with the Plan documents.

WHEREFORE, Ms. Marcin respectfully requests this Court to:

Declare  that she is entitled to all benefits under the policy including payment of all back benefits with interest;.

Payment of all attorney's fees and costs associated with attempting to secure these benefits pursuant to Section 502(g)(1) of ERISA;

Restoration of life insurance with refund of previously paid premiums;

Payment of all required contributions to Ms. Marcin's retirement plan;

Vacate this Court's previous decision in this matter; and

Any such other equitable relief  that the Court may deem just and proper.

Respectfully submitted,


_____/s/_____
Scott B. Elkind, Bar 10810

15

Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
P: (301) 495-6665
F: (301) 565-5111
Attorney for Plaintiff


Plaintiff requests oral argument concerning all issues raised herein.


_____/s/_____