**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>JILL MARCIN,        )<br>             )<br>     Plaintiff,     )<br>             )<br>    v.         )<br>             )<br>RELIANCE STANDARD LIFE   )<br>INSURANCE COMPANY, *et al.*,   )<br>             )<br>     Defendants.    )<br>_____ ) | Civil Action No. 13-1308 (ABJ) |

**MEMORANDUM OPINION**

Since 2010, plaintiff Jill Marcin has been engaged in litigation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, with defendants Reliance Standard Life Insurance Company ("Reliance") and Mitre Corporation Long Term Disability Insurance Program ("Mitre"). Reliance denied plaintiff's claim for disability benefits under the Mitre plan on two previous occasions, but the Court found in each case that the denial was not adequately justified, and it remanded the matter to the insurer for further consideration. *See Marcin v. Reliance Standard Life Ins. Co.*, 895 F. Supp. 2d 105 (D.D.C. 2012); Mem. Op. & Order (Apr. 14, 2015) [Dkt. # 43] ("Mem. Op. & Order") at 16.

On May 29, 2015, Reliance notified the Court of its latest final decision on plaintiff's claims. Defs.' Notice of Final Decision [Dkt. # 44] ("Notice"). Based on its review of the materials plaintiff had submitted, Reliance concluded for a third time that plaintiff "was capable of performing all of the material duties of her regular occupation on a full time basis" when her

coverage under the disability insurance plan ended, and that she was therefore not entitled to benefits.  Ex. A to Defs.' Notice of Final Decision [Dkt. # 44-1] ("Final Decision") at 8. [1]

Despite the deferential standard of review that applies in this case, the Court finds that the insurer's decision cannot be sustained.  The record in this case does not contain substantial support for the insurer's finding that she was capable of working full-time when she stopped working, and that is the basis upon which it denied her claim for benefits.  Accordingly, the Court will enter judgment in favor of the plaintiff.  It is important to note, however, that the Court's entry of judgment for plaintiff is not a judicial determination that plaintiff was "totally disabled" at the time she stopped working.  Rather, this decision is limited to the finding that Reliance's denial of benefits to plaintiff based on its determination that she was capable of full-time work was not reasonable.

## BACKGROUND

The Court detailed the factual background of this case in its April 14, 2015 Memorandum Opinion and Order, *see* Mem. Op. & Order at 1–7, so it will only restate key portions of that summary below.  Plaintiff Jill Marcin was diagnosed with serious medical conditions, including portal vein thrombosis and kidney cancer, in November 2005, and she underwent surgery related to her ailments in the fall of 2007.  *Marcin*, 895 F. Supp. 2d at 108.  Marcin returned to work part-

---

1 *See also* Final Decision at 7 ("RSL's review of the records during this time period reveals little support the assertion [sic] that Ms. Marcin could not perform the full time duties of her regular occupation during this period due to these conditions…..  Dr. Felice's medical records during Ms. Marcin's eligibility periods failed to support full-time work impairment…..Dr. Elmagd's medical note [sic] … do not indicate that complete work stoppage was required….  Given lack of evidence that Ms. Marcin was impaired from full time work, RSL's conclusion that she did not meet the definition of *Total Disability* was appropriate."); *id.* at 7 ("RSL concluded Ms. Marcin was not *Totally Disabled* as the evidence failed to show that her impairments prevented her from performing all the material duties of her regular occupation on a full-time basis. By reaching this conclusion, it follows that Ms. Marcin was also not *Partially* or *Residually Disabled* as a finding of an ability to work full-time indicates that she could work on a part-time basis as well.")

time with the approval of her physicians in early November 2007. *Id.* at 114. From that time until mid-February 2008, Marcin worked a reduced number of hours, which varied based on the particular week. *Id.* at 108. She stopped working altogether on February 15, 2008. *Id.* She filed a written application for disability benefits under the Mitre policy on March 25, 2008, claiming that her last day of work before becoming disabled had been August 19, 2007. *Id.*

Reliance denied Marcin's claim for disability benefits on June 11, 2008. *Id.* at 108–09. It affirmed the denial on September 29, 2009, after considering plaintiff's administrative appeal. *Id.*

On May 28, 2010, plaintiff received a fully favorable decision from the Social Security Administration ("SSA"), which concluded that, "[b]ased on the application for a period of disability and disability insurance benefits filed on April 14, 2008, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since August 20, 2007." Decision, SSA Office of Disability Adjudication and Review, Pl.'s Ex. Submission [Dkt. # 40] ("SSA Decision") at 5. Plaintiff's counsel submitted the SSA's decision to Reliance on June 21, 2010. Marcin2 988.[2] Reliance responded on June 24, 2010, stating that its "internal guidelines only provide[d] for one administrative appeal," and that, "[a]ccording to [its] records, this appeal ha[d] already been provided and [its] decision communicated to [plaintiff] on September 29, 2009."

---

2     Plaintiff submitted her own voluminous administrative record to the Court and citations to that record are designated with the prefix "Marcin2" followed by the stamped page number. The Court notes that plaintiff submitted only a paper copy of this record, and thus failed to comply with the Local Civil Rule of this Court that requires, with limited exceptions, that "[e]very unsealed document . . . be filed electronically."  LCvR 5.4(e)(1).

AR2 0201.[3]  For that reason, Reliance stated that its "previous determination remain[ed] final" and that it was "unable to further address [plaintiff's] appeal." *Id.*

Marcin filed a complaint in this Court on October 26, 2010, *Marcin*, 895 F. Supp. 2d at 112, and both sides moved for summary judgment.  *Id.* at 107.  On September 28, 2012, after a comprehensive review of the evidence and arguments presented by both sides, *see id.* at 114–22, the Court denied defendants' motion and granted plaintiff's motion in part by remanding the matter to Reliance.  *Id.* at 123–24.

In its opinion remanding the case, the Court stated that "the only question" before it was whether plaintiff "was unable to work when she stopped" in February 2008, and it noted that, for plaintiff to prevail, the record had to show that she became disabled before her coverage under the Mitre plan expired on March 1, 2008.  *Marcin*, 895 F. Supp. 2d at 114.  The Court undertook a detailed analysis of the record and chronology of events, and it concluded that this was "a very close case."  *Id.* at 122.  The Court observed that although plaintiff plainly suffered from severe medical conditions, *id.* at 114, she had done "little to meet her burden under the policy to demonstrate that she was disabled" during the relevant time period.  *Id.* at 122.  At the same time, however, the Court noted that defendants had "failed to point to much evidence to support the finding" that plaintiff was *not* disabled at the relevant time, "even under a deferential standard of review."  *Id.*  "So," the Court stated, "whether the insurer's determination was reasonable on this record depends in large measure on what that determination was and the stated reasons behind it." *Id.* at 119.

---

3       Citations to "AR2" refer to the administrative record filed in this case.  Citations to "AR1" refer to the administrative record filed in the first iteration of this case, *Marcin v. Reliance Standard Life Ins. Co.*, 895 F. Supp. 2d 105 (D.D.C. 2012) (No. 10-cv-1816).   The portions of the administrative record in the earlier case that are cited in this Memorandum Opinion are found at docket number 26 in that case.

Ultimately, the Court found that it could not determine whether Reliance's decision to deny benefits to plaintiff was reasonable because it was not clear what the grounds for that decision were.  *Id.* at 122.  The Court explained:

> While the Court's review of Reliance's decision is highly discretionary, Reliance still must provide enough evidence to support a finding that the decision was reasonable and supported by the record.  In order to make that finding, it is essential that the Court understand what the decision was:  what did the plan administrator find and what were the grounds for that decision? Based on the record submitted by Reliance, particularly the letter it sent plaintiff denying the claim for benefits, the Court cannot answer those questions. While the discussion of plaintiff's medical condition is not difficult to follow, it is not clear how Reliance plugged those facts into the rubric established under the Policy.

*Id.* (internal citation omitted).  The Court went on to detail several aspects of the decision that were ambiguous.  *Id.* at 122–23.  The Court then remanded the case to Reliance with instructions "to reconsider its denial of benefits and to explain specifically how the [disability insurance] Policy applies to the evidence in the record, which section of the Policy is controlling, and whether the decision [to deny plaintiff benefits] is based on findings of Total Disability, Partial Disability, or Residual Disability."  *Id.* at 123.

Reliance issued a letter to plaintiff reiterating its decision to deny her claim for disability benefits on January 7, 2013.  AR2 0202 [Dkt. # 24].  The letter indicated that Reliance's decision was based on the same information it had considered previously – plaintiff's claim file and the opinions of Reliance's own medical consultants.  *See* AR2 0205.  In addition, the denial letter relied on a new report by a vocational specialist, who had been commissioned to look at whether plaintiff was partially disabled based on the medical records.  AR2 0205-06.

On June 28, 2013, plaintiff submitted voluminous materials to Reliance in an attempt to appeal the January 2013 denial of benefits, including another copy of the Social Security Administration's decision awarding plaintiff disability benefits, *see* Marcin2 at 988–95, and a new

report from another vocational specialist.  *See* Marcin2 at 4490–501.  On July 24, 2013, Reliance declined to consider plaintiff's appeal, stating again that plaintiff had already received the one appeal to which she was entitled under its internal guidelines.  AR2 0208.

Plaintiff filed a second complaint in this Court on August 28, 2013, challenging the January 2013 denial of disability benefits.  Compl. [Dkt. # 1].

On November 15, 2013, plaintiff filed a "motion to establish claim record and standard of review."  Pl.'s Mot. to Establish Claim Record [Dkt. # 12] ("Claim Record Mot."); Mem. of P. & A. in Supp. of Claim Record Mot. [Dkt. # 12-1] ("Claim Record Mem.").  In that motion, plaintiff asked the Court:  (1) to rule that the materials she had submitted with her attempted administrative appeal of Reliance's January 7, 2013 decision were part of the record before the Court; and (2) to alter the standard of review in this case from "abuse of discretion" to *de novo* in view of what she contended was defendants' record of violations under ERISA.  Claim Record Mem. at 24–25. Defendants took the position that because plaintiff was not entitled to appeal the January 2013 denial of benefits, the materials she submitted with her attempted appeal were not part of the record in this case.  Defs.' Mem. of P. & A. in Opp. to Claim Record Mot. [Dkt. # 13] at 9–12.  Defendants also argued that the standard of review should not change.  *Id.* at 14–15.

On April 16, 2014, the Court granted plaintiff's motion in part and denied it in part in a ruling from the bench.  *See* Tr. of Status Hr'g (Apr. 16, 2014) ("Status Hr'g Tr.") at 7.  First, the Court held that the materials plaintiff had submitted to Reliance with her appeal would be part of the record in this case.  *Id.* at 6–7.  It noted that Reliance itself had expanded the record by relying on a new vocational report in its January 7, 2013 decision, and that plaintiff had submitted additional materials in response to that decision.  *Id.* at 6.  The Court also deemed Reliance's refusal to consider plaintiff's appeal to be a denial of the appeal.  *Id.* at 6–7.  Finally, the Court

found that plaintiff had not shown any bad faith or malfeasance on the part of defendants, and it held that the deferential standard of review would continue to apply. *Id.* at 5.

Defendants moved for summary judgment on July 29, 2014. Defs. Reliance Standard Life Ins. Co. & the Mitre Corp. Long Term Disability Ins. Program's Mot. for Summ. J. [Dkt. # 30] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 30] ("Defs.' Mem."). On February 24, 2015, the Court issued an order granting defendants' motion for summary judgment in part, resolving two of the issues presented. Order (Feb. 24, 2015) [Dkt. # 37]. First, after considering plaintiff's argument that her coverage under the Mitre policy ended much later than March 1, 2008, the Court affirmed its previous finding that plaintiff ceased to be covered by the Mitre disability insurance policy on March 1, 2008. *Id.* at 3–4; *see also Marcin*, 895 F. Supp. 2d at 114. The Court also reiterated its previous finding that defendants' reliance on the opinions of Dr. Dean and Dr. Shipko, medical consultants who conducted a paper review of plaintiff's records, was not unreasonable, arbitrary and capricious, or evidence of bias. Order (Feb. 24, 2015) at 4–5; *see also Marcin*, 895 F. Supp. 2d at 120 n.7. The Court refrained, however, from determining whether defendants' reliance on the new vocational report was reasonable. Order (Feb. 24, 2015) at 5. In addition, the Court did not rule on the ultimate question in this case: whether Reliance's denial of benefits to plaintiff was reasonable.

The Court held a hearing on the remainder of defendants' motion on March 20, 2015. At the hearing, plaintiff's counsel submitted supplemental exhibits containing legal authority that had not been cited in plaintiff's previous pleadings. *See* Pl.'s Ex. Submission [Dkt. # 40]. In particular, plaintiff argued that it was unreasonable for Reliance to refuse to consider the finding of the Social

Security Administration that she had been disabled since August 20, 2007.[4]  *Id.* at 2–4.  In light of this belated submission, the Court permitted defendants to file a supplemental submission of their own to address "the question of whether – assuming the Social Security decision was part of the record before the insurer – it would have been unreasonable for the insurer to fail to consider it." Min. Order (Mar. 27, 2015).  Defendants filed a supplemental pleading on March 31, 2015, arguing that it was not unreasonable for Reliance to "refuse" to consider the Social Security decision. Defs.' Supplemental Submission in Resp. to March 27, 2015 Order [Dkt. # 41] ("Defs.' Supp.") at 3–4.

On April 14, 2015, the Court denied defendants' motion for summary judgment and remanded the case to Reliance once again.  Mem. Op. & Order at 16.  It found first that it was unreasonable for Reliance to refuse to consider the Social Security Administration's determination in connection with its review of plaintiff's claim.  *Id.* at 10–14.  Second, the Court found that it was not clear from the decision letter whether Reliance had "focused on the time period that the Court identified as critical in this case," namely the time period between November 2007, when plaintiff returned to work, and March 1, 2008, when plaintiff's plan coverage terminated.  *Id.* at 14, 16.  Accordingly, the Court exercised its discretion to remand the case to Reliance once more with the following instructions:

> Reliance is directed to reconsider its denial of benefits in light of all of the materials before it, including, in particular, the Social Security Administration's determination and the vocational report plaintiff submitted in response to the report of Kate M. Hulsey, relied upon in the January 2013 decision.  The decision on remand should also state clearly whether plaintiff was disabled under the terms of the policy at any time *after* November 6, 2007, and before March 1, 2008.  No new information may be added to the record by the parties, and plaintiff is not entitled to an administrative appeal of Reliance's decision after this remand.  Reliance

---

4       The Court notes that plaintiff raised the issue of the Social Security Administration's decision in her pleadings, as well.  *See* Pl.'s Opp. to Defs.' Mot. [Dkt. # 31] at 22.

shall notify plaintiff and the Court of its final decision on plaintiff's application for disability benefits on or before May 29, 2015.

*Id.* at 16.

On May 29, 2015, Reliance notified the Court that it had reached a final decision to deny plaintiff's claim for benefits.  Notice [Dkt. # 44].  That same day, the Court issued a Minute Order permitting plaintiff to "submit a pleading not to exceed 15 pages that sets forth her position on whether defendants' decision can withstand the deferential standard of review that applies in this case, and if not, why not."  Min. Order (May 29, 2015).  The Court further specified that plaintiff was not to "rely upon or submit any new evidence that is not already in the record," or to "revisit any of the issues the Court has already resolved, including which materials are in the record, the date on which plaintiff's coverage under the Mitre policy ended, the propriety of defendants' reliance on the opinions of Dr. Dean and Dr. Shipko, and the applicable standard of review."  *Id.*

On June 29, 2015, plaintiff filed a memorandum in response to Reliance's Final Decision. Pl.'s Suppl. Mem. [Dkt. # 45] ("Pl.'s Supp. Mem.").  Defendants responded on July 7, 2015.  Defs.' Resp. to Pl.'s Supp. Mem. [Dkt. # 46] ("Defs.' Resp.").

## STANDARD OF REVIEW

This matter is before the Court after a second remand, and the Court must now determine whether the insurer's decision should be upheld under the applicable standard.  ERISA provides that a participant in, or beneficiary of, a covered plan may sue "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has held that courts should apply a *de novo* standard – instead of the more deferential arbitrary and capricious standard – to a benefits determination under ERISA "unless the plan provides to the contrary."  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), citing *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  A plan "provides to the contrary" when it grants its "administrator or fiduciary discretionary authority to determine eligibility for benefits." *Id.*, quoting *Firestone*, 489 U.S. at 115.  Under those circumstances, "[t]rust principles make a deferential standard of review appropriate."  *Firestone*, 489 U.S. at 111; *cf. Fitts v. Fed. Nat'l Mortg. Ass'n*, 236 F.3d 1, 5 (D.C. Cir. 2001) (deciding when the *Firestone* exception applies).

The policy at issue in this case provides:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.  Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

AR1 at 14.  As the Court held in its first opinion, *Marcin*, 895 F. Supp. 2d at 113, and reaffirmed in its April 14, 2015 ruling, Mem. Op. & Order at 8, the deferential standard of review applies here.  Accordingly, the Court reviews the benefits determination under an abuse of discretion standard.

Once a determination has been made that the deferential standard applies, the "essential inquiry" is whether the administrator "reasonably construe[d] and appl[ied]" the plan.  *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992).  The administrator's decision should not be overturned if it is the result of a "deliberate, principled, reasonable process and if it is supported by substantial evidence," which has been characterized as "more than a scintilla but less than preponderance."  *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 92, 100 (D.D.C. 2003), quoting *Leonard v. Sw. Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003); *accord Boster v. Reliance Standard Life Ins. Co.*, 959 F. Supp. 2d 9, 23 (D.D.C. 2013); *see also Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 48 (D.D.C. 2005) ("[A] deferential standard of review allows the plan administrator to reach a conclusion that may technically be incorrect so

long as it is reasonably supported by the administrative record."). A court's review of a benefits determination "may only be based on the record available to the administrator or fiduciary at the time the decision was made." *Crummett v. Metro. Life Ins. Co.*, No. 06-01450, 2007 WL 2071704, at *3 (D.D.C. July 16, 2007), citing *Block*, 952 F.2d at 1455.

In addition, the Supreme Court has instructed that courts must account for the inherent "conflict of interest" that arises when, as here, a plan administrator "both evaluates claims for benefits and pays benefits claims." *Glenn*, 554 U.S. at 112. The Court explained that this conflict of interest is a "factor" to be considered, and that "any one factor will act as a tiebreaker when the other factors are closely balanced." *Id.* at 117. The conflict of interest factor "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*; *see also Brown v. Hartford Life & Accident Ins. Co.*, 12 F. Supp. 3d 88, 99–100 (D.D.C. 2014) (upholding reasonableness of administrator's decision where there was no evidence the conflict "actually affected" the decision) (citation and internal quotation marks omitted); *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 206 (D.D.C. 2010) (upholding reasonableness of administrator's decision where there was no showing that the inherent conflict of interest "improperly influenced the ultimate benefits determination"), *aff'd* 644 F.3d 427 (D.C. Cir. 2011).

## ANALYSIS

The Court finds that, although certain aspects of Reliance's Final Decision were reasonable, the insurer's ultimate conclusion that plaintiff "was capable of performing all of the material duties of her regular occupation on a full time basis between November 6, 2007 and March

1, 2008," Final Decision at 8, is not supported by "substantial evidence."  *See Buford*, 290 F. Supp. 2d at 100.

Specifically, the Court finds that it was reasonable for Reliance to decline to defer to the Social Security Administration's disability finding, to decline to rely on the vocational report submitted by plaintiff, and to conclude that the various articles, transcripts, and other unrelated evidence submitted by plaintiff did not support a disability finding.

But, as the Court has previously stated, the reasonableness of Reliance's ultimate decision "depends in large measure on what that determination was and the stated reasons behind it." *Marcin*, 895 F. Supp. 2d at 119.  The Final Decision explains that Reliance's denial of plaintiff's claim for benefits was based on its finding that she was capable of working full time when she stopped working completely.  Final Decision at 8.  In support of that determination, Reliance points to a vocational report that it commissioned, plaintiff's own medical records, and the reports of Reliance's independent medical reviewers.  *Id.* at 4–8.  But the vocational report merely restates the conclusions reached by Reliance's reviewers without adding anything new to the records, *see* AR2 1877–80; plaintiff's medical records do not contain support for the finding that she could work full time when she stopped, *see infra* § IV; and Reliance has misstated a key portion of its expert medical reviewer's report.  *See id.*  In addition, Reliance entirely failed to grapple with the fact that plaintiff never worked full time between November 2007 and February 2008, and that the hours she did work declined sharply in the weeks before she stopped altogether.  *See* AR1 114. Thus, the Court cannot conclude that Reliance's determination that plaintiff was capable of working full-time on March 1, 2008, was "reasonably supported by the administrative record." *See Mobley*, 405 F. Supp. 2d at 48, and so the insurer's decision will not be upheld.

I.      **The Social Security Disability Decision**

On April 14, 2015, Court remanded this matter to Reliance a second time in part because it found that the insurer's "refusal" to even consider the Social Security Administration's determination that plaintiff has been disabled under the Social Security Act since August 20, 2007, to be unreasonable.  Mem. Op. & Order at 10–14.  ERISA plan administrators are not bound by an SSA finding of disability, and "employers have large leeway to design disability and other welfare plans as they see fit."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).  But the "[f]ailure to address a contrary SSA award can suggest 'procedural unreasonableness' in a plan administrator's decision" under some circumstances.  *Schexnayder v. Hartford Life & Accident Ins. Co*, 600 F.3d 465, 471 (5th Cir. 2010), quoting *Glenn*, 554 U.S. at 118.

The Final Decision indicates that after the remand, Reliance considered the SSA's determination and reasonably rejected it.  *See* Final Decision at 2–3.  Reliance noted that entitlement to Social Security disability benefits "is based upon a different set of guidelines" than the ones that governed its determination, and that the SSA "was able to consider evidence outside of Ms. Marcin's eligible coverage period of August 20, 2007 to March 1, 2008."  Final Decision at 2.  In addition, Reliance pointed out that plaintiff never provided a copy of the full claim file upon which the SSA decision was based, so the insurer could not form its own opinion of the evidence before the Administrative Law Judge.  *Id.*  Finally, Reliance found it "noteworthy" that the SSA Administrative Law Judge relied on plaintiff's "subjective complaints regarding 'the intensity, persistence and limiting effects' of her symptoms," rather than basing its determination

solely "on the medical evidence" and on expert opinions.[5]  *Id.* at 3.  For all of these reasons, Reliance concludes that the SSA's determination "does not alter [its] previous denials of LTD benefits" to plaintiff. [6]  *Id.*

Plaintiff objects that defendants "made no effort" to request the documents underlying the SSA's determination or to investigate the SSA's disability finding.  Pl.'s Supp. Resp. at 2.  But despite submitting voluminous documents to Reliance with her various appeals, plaintiff never made the record before the SSA part of the record before Reliance, and she cites no authority for the proposition that it was Reliance's responsibility to seek out that information.  *See Block*, 952 F.2d at 1455–56 (according "no weight to the Social Security Administration's determination" because "[t]he Social Security award . . . rested at least in part on medical reports never submitted to the [plan administrator]").  In light of the grounds set forth in the Final Decision, the Court finds that Reliance reasonably declined to defer to the SSA disability finding.

## II.    Plaintiff's Ancillary Submissions

Plaintiff's most recent appeal of Reliance's benefits determination included numerous copies of medical case studies, journal articles, opinion pieces, codes of conduct, and more. Reliance reasonably concluded that those general materials did not bear on plaintiff's ability to work on March 1, 2008.  *See* Final Decision at 5–6.  In addition, plaintiff continued to press the argument that defendants' expert reviewers were tainted by providing legal and other documents

---

5    The Court notes that, under some circumstances, it can be unreasonable for an insurer to ignore the subjective evidence offered by a claimant.  *See Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 834–35 (7th Cir. 2009) (finding that it was unreasonable for the defendant plan to dismiss the claimant's subjective complaints "out of hand," and that the defendant needed to "explain why, despite evidence to the contrary . . . , it nevertheless finds [the plaintiff's] complaints of pain unreliable . . . .").

6    Reliance also takes issue with a purported misstatement of the medical evidence by the SSA.  *See* Final Decision at 3.

that purportedly demonstrated their bias.  *Id.*  But, as the Court has already concluded, plaintiff's

bias argument lacks merit, and so it was not unreasonable for the insurer to discount those materials

as well.  *See* Order (Feb. 24, 2015) at 4–5; *Marcin*, 895 F. Supp. 2d at 120 n.7.  Finally, it was

reasonable for Reliance to conclude that medical records dated long after March 1, 2008 were not

relevant to the question of whether plaintiff was disabled at that critical time.[7]  *See* Final Decision

at 5.

## III.   The Vocational Reports

In its most recent remand of this case, the Court directed Reliance to consider a vocational

report submitted by plaintiff, and not solely its own vocational report, as it had previously done.

*See* Mem. Op. & Order at 4.  The Final Decision reflects the insurer's consideration of both reports,

as well as its decision to reject plaintiff's report and to rely on its own.  *See* Final Decision at 3–4.

The Court finds that the insurer's decision to reject plaintiff's vocational report was reasonable

and within the bounds of its discretionary power.  But the Court also finds that Reliance's own

vocational report merely restates facts and opinions that were already in the record without adding

more, and so it cannot be considered additional evidence in support of the insurer's ultimate

conclusion.

First, it was reasonable for Reliance to decline to rely on plaintiff's vocational report.  *See*

Final Decision at 3–4.  As the Final Decision notes, plaintiff's vocational report "relies heavily

[on] evidence that occurred *after* Ms. Marcin's eligibility period of November 2007 to March

---

7   The Court does not, however, accept defendants' suggestion that *all* records "dated after
March 2008" are "not relevant to the specific time frame of Ms. Marcin's eligibility," Final
Decision at 5, and it notes that the insurer – and its experts – have relied on records dated in May
of 2008 and later in previous determinations.  *See, e.g.*, AR1 115 (Reliance's determination dated
September 29, 2009); AR1 309 (report of defendant's expert, Dr. Dean, relying on records dated
as late as January 22, 2009).

2008." *Id.* at 3; *see also* Marcin2 004493 (reflecting plaintiff's vocational reviewer's reliance on records dated as late as 2011). Reliance also objects that, like the SSA determination, plaintiff's report "relies on Ms. Marcin's subjective descriptions and not the objective evidence contained in the claim file," and notes in particular that the vocational reviewer used plaintiff's own account of her job duties instead of the description supplied by her employer, defendant Mitre. Final Decision at 4. Finally, Reliance objects that plaintiff's vocational report "fail[s] to account for the time period Ms. Marcin was in fact able to work." *Id.* at 5. For all of these reasons, Reliance decided not to rely on plaintiff's report. *Id.* Whether or not the Court would come to the same conclusion, the Court finds that the Reliance decision was reasonable and not an abuse of discretion. *See Mobley*, 405 F. Supp. 2d at 48.

Reliance also commissioned its own vocational report, and it cites that report in support of its decision to deny benefits to plaintiff. *See* Final Decision at 4 ("RSL continues to assert that [its] Vocational Report provides a reasonable opinion regarding Ms. Marcin's ability to perform [sic] on a full-time basis during her period of eligibility."). The four-page report, authored by Kate Hulsey, consists of the following: (1) a description of the material duties of plaintiff's position with Mitre, as provided by Mitre, AR2 1877–78; (2) a description of the material duties of a "Project Engineer" and a "Computer Systems Engineer" as established by the Department of Labor, AR2 1878–79; (3) a summary of the findings of defendants' experts, Dr. Dean and Dr. Shipko, AR2 1880; and (4) Hulsey's conclusion that the restrictions described by the experts "are consistent with the physical demands of a Project Engineer and a Computer Systems Engineer," and therefore that "[t]here are no restrictions or limitations that would preclude Ms. Marcin from performing her regular occupation on either a full time or part time basis." *Id.*

16

But Reliance's vocational report consists of nothing more than a restatement of evidence and opinions that were already in the record.  *See, e.g.*, AR1 1476–77 (description of plaintiff's job duties that is identical to the one in the vocational report); AR1 66 (disability claim form noting plaintiff's that plaintiff's "regular occupation is a combination of[:]  1. Project Engineer . . . [and] 2. Computer Systems Engineer"); AR1 306–10 (report of Dr. Dean); AR1 315–20 (report of Dr. Shipko).   The vocational reviewer did not examine any of the medical evidence submitted by plaintiff and she "failed to account for the time period Ms. Marcin was in fact able to work" only part-time.  *See* Final Decision at 5.  So, the Court finds that Reliance's vocational report adds nothing new to the record before the insurer or the Court, and it cannot be considered additional evidence in support of the Reliance's determination.

## IV.   Reliance's Determination

Without the reports and submissions addressed above, the state of the record in this case is the same as it was when the Court first considered it in 2012.  *See Marcin*, 895 F. Supp. 2d at 105.  As the Court concluded then, this is a very close case:  plaintiff has offered "little to meet her burden under the policy to demonstrate that she was disabled," but defendants have not "point[ed] to much evidence to support the finding that she is not, even under a deferential standard of review."  *Id.* at 122.  The key difference between the Court's decision in 2012 and its decision today, though, is that Reliance has now responded to the Court's direction to "explain the grounds for its decision denying plaintiff benefits."  S*ee id.* at 107.  Reliance stated that plaintiff was not totally, partially, or residually disabled at the relevant time because she "was capable of performing all of the material duties of her regular occupation on a full time basis" on March 1, 2008.  Final Decision at 7–8.  It is this finding that must be subjected to the deferential review that is

contemplated by the ERISA statute.  *Id.* at 123.  But even under that highly deferential standard, the Court finds that Reliance's determination was not reasonable and cannot be upheld.

"Applying a deferential standard of review does not mean that the plan administrator will prevail on the merits," but it does mean "that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'"  *Conkright v. Frommert*, 559 U.S. 506, 521 (2010), quoting *Firestone*, 489 U.S. at 111.  A decision is reasonable if it results from a "deliberate, principled reasoning process," and is supported by "substantial evidence," meaning "more than a scintilla but less than a preponderance."  *Buford*, 290 F. Supp. 2d at 100 (citations omitted).  A plan administrator is "not obliged to accord special deference to the opinions of treating physicians," *Black & Decker*, 538 U.S. at 825, and "[i]t is not an abuse of discretion to value the opinions of the insurer's own medical consultants over those of the participant's treating physician."  *Pettaway*, 699 F. Supp. 2d at 205, quoting *Doley v. Prudential Ins. Co. of Am.*, No. 05-277, 2006 WL 785374, at *2 (D.D.C. Mar. 28, 2006).  As another court in this District has observed, "if the medical evidence is close and supports both conclusions, then judicial deference would support [a] plan administrator's decision."  *Mobley*, 405 F. Supp. 2d at 48.

In support of the determination that plaintiff was capable of performing her job duties on a full-time basis on March 1, 2008, Reliance points to four notes contained in plaintiff's medical records and the opinions of its own independent medical experts.  *See* Final Decision at 6–7.  With respect to the medical records, the insurer specifically points to three entries by Dr. Felice, one of plaintiff's treating physicians:

- On November 30, 2007, Dr. Felice "noted [plaintiff's] low blood count levels," "suggested she may be anemic," and "ordered testing.  *Id.* at 7.

- On December 31, 2007, Dr. Felice found plaintiff to be "reasonably well" but noted that she had "some mild fatigue," that she had been "a little bit anemic," and that she was "eating some beef."  *Id.*

- On February 29, 2008, eleven days after plaintiff stopped working, Dr. Felice noted that she was "feeling better" but that she "still [had] much fatigue," which "limit[ed] her ability to work."  *Id.*  He also stated that she was taking oral iron.  *Id.*

Reliance points out that these records do not indicate that Dr. Felice advised plaintiff to stop working, and it summarizes the notes with the characterization that the doctor "continues to report how well [plaintiff] is doing."  *Id.*

The Final Decision also points to one record from Dr. Abu-Elmagd, the treating physician who submitted medical evidence in support of plaintiff's disability claim.  *See id.* at 6–7. Specifically, Reliance examines the doctor's medical note dated March 20, 2008, which reflects plaintiff's report that her "energy [was] very low," and her complaints of a two-month-long sinus infection, poor appetite, weight gain, and an "upset stomach."  *Id.* at 7.  The insurer observes that plaintiff did not see Dr. Abu-Elmagd until March 20, 2008, about a month after she stopped working, and states that it "finds it curious that the physician attesting to [plaintiff's] inability to work did not treat Ms. Marcin during the relevant time frame of November 8, 2007 and March 1, 2008."[8]  *Id.*

Based on these records from Dr. Felice and Dr. Abu-Elmagd, Reliance concludes that there is a "lack of evidence that Ms. Marcin was impaired from full-time work," and that she therefore does not meet the definition of "Total Disability" under the plan.  *Id.*  It notes that some of the

---

8      The Court notes that Dr. Abu-Elmagd was a specialist located in Pittsburgh, *see* AR1 666, and so one could also conclude that plaintiff's failure to travel several hundred miles around the time that she stopped working is consistent with her claim of disability.

records characterize plaintiff's fatigue as only "mild," and that the records reflect "no mention of discussion regarding work stoppage with her physicians." *Id.*

Reliance's observation that these records do not prove that plaintiff was "totally disabled," is not unreasonable. But that was not the basis for the insurer's decision: rather, it denied plaintiff's claim based on a finding that she "*was* capable of performing all the material duties of her regular occupation *on a full time basis* between November 6, 2007 and March 1, 2008." Final Decision at 8 (emphasis added). There is little support for the conclusion that plaintiff was capable of working full time when she stopped in these records, which indicate that plaintiff was struggling with increasingly severe fatigue.

Moreover, the insurer fails to explain why it does not address the three additional medical records from Dr. Abu-Elmagd and Dr. Felice that also shed light on plaintiff's condition at the critical time. First, Reliance does not discuss the second note that Dr. Abu-Elmagd wrote on March 20, 2008, which stated: "Jill is currently in Pittsburgh for additional testing. She will need to remain off of work until further notice, pending test results." AR1 870. It also provided a phone number to call with any questions. *Id.*

Second, the Final Decision contains no discussion of Dr. Abu-Elmagd's responses on the Reliance form that he completed in connection with plaintiff's claim for disability benefits, which was dated March 25, 2008. *See* AR1 665–66. The form includes Dr. Abu-Elmagd's assessment of plaintiff's symptoms ("extreme fatigue, frequent illness"); his estimation that plaintiff was, at most, capable of "sedentary" work; his indication that plaintiff had not yet "achieved maximum medical improvement" and that he expected she might do so in "less than 16 months"; and his indication that it was "unknown" whether plaintiff would make a full recovery. *Id.*

And, third, the insurer ignores a progress note dated April 14, 2008 from Dr. Felice, which states that plaintiff's "main problem is one of persistent fatigue that has prevented her from working." *See* AR1 783–84. This record also notes that plaintiff "gets low grade temperatures," and that the doctor was going to prescribe her a new medication to "see if that makes her feel better,"[9] indicating that she was not feeling well. *Id.*

Looking at the records from Dr. Felice and Dr. Abu-Elmagd as a whole, it becomes clear that plaintiff's medical records, sparse as they may be, all point toward the conclusion that plaintiff's health worsened between the time she started working in November 2007 and March 1, 2008. The records that pre-date March 1 indicate that plaintiff's condition shifted from "mild fatigue" to "much fatigue [that] limits her ability to work," between December 31, 2007, and February 29, 2008. *See* AR1 114, 786. And the records that immediately post-date March 1, 2008, state that plaintiff's "energy level [was] very low," that she was failing to thrive, that she "need[ed] to remain off of work until further notice," that she suffered from "extreme fatigue" and "frequent illness," that it was "unknown" whether and when she would fully recover, and that "[h]er main problem is one of persistent fatigue that has prevented her from working." AR1 354–55, 665, 783–84, 870. Thus, although the medical evidence might well support a decision based on a finding that plaintiff was not "totally disabled" at the relevant time, the Court cannot see how the records provide any support for the conclusion that plaintiff "was capable of perform all of the material duties of her regular occupation on a full time basis" when she stopped working. *See*

---

9       Again, although the Court agrees with Reliance that records that significantly post-date March 1, 2008 do not bear on plaintiff's disability status at that time, Reliance offers no explanation as to why it considered one record dated March 20, 2008, but not the second record from that same date, or the records dated March 25 and April 14. Indeed, Reliance's own medical expert, Dr. Dean, considered records dated in April and May of 2008, as well as a record dated January 22, 2009, in connection with this case. *See* AR1 309.

Final Decision at 8.  Moreover, although it is well-established that Reliance was "not obligated to accord special deference to the opinions of [plaintiff's] treating physicians," *Black & Decker*, 538 U.S. at 825, Reliance's selective description of the medical evidence further undermines the reasonableness of its decision.

In the absence of support for the Final Decision in the records of the treating physicians, the Court is left with the insurer's reliance on the opinions of its independent experts, particularly the medical expert, Dr. Dean.[10]  Final Decision at 7.  The insurer specifically takes note of two aspects of Dr. Dean's report:  his assessment that plaintiff's "likelihood of cure is > than 90% and in my opinion there are not medically related problems from this procedure"; and his conclusion that plaintiff's "work capacity" was "in an approximate light category of work."[11]  *Id.*; *see also* AR1 310.  Reliance states that Dr. Dean's report further shows that plaintiff "was capable of performing all of the material duties of her regular occupation on a full time basis" when she stopped working.  Final Decision at 8.

But Reliance's use of Dr. Dean's statement about plaintiff's likelihood of cure is misleading.  A review of the report reveals that Dr. Dean's assessment that plaintiff's "likelihood of cure is > than 90%" related to her Stage 1 kidney cancer only, and not to the full panoply of ailments that form the basis of her claim for disability benefits.  *See* AR1 310.  The doctor's

---

10    Reliance's psychiatric expert, Dr. Shipko, concluded that plaintiff was not disabled from a mental health perspective at the time she stopped working.  AR1 at 315, 319.  As the Court previously observed, Dr. Shipko's expert report "adds very little to the equation" and it is generally consistent with the report of plaintiff's own mental health expert.  *Marcin*, 895 F. Supp. 2d at 121.  Reliance's conclusion that plaintiff was not prevented from working by psychiatric issues is reasonable, but it is worth noting that plaintiff does not seriously contend that her mental health issues were the reason she stopped working.

11    The "light" category is more strenuous than the "sedentary" category in which Dr. Abu-Elmagd placed plaintiff.  *Compare* AR1 301, *with* AR1 666.

prediction is contained in a two-sentence paragraph that is separate from the paragraphs that describe plaintiff's overall medical conditions.  It states:

> She has had surgery for Stage 1 right kidney cancer that was an incidental finding from a CT scan.  Her likelihood of cure is > than 90% and in my opinion there are no medically related problems from this procedure.

AR1 310.  So this has little or nothing to do with plaintiff's ability to work full time.

By contrast, two paragraphs earlier, Dr. Dean describes plaintiff's full set of diagnoses as follows:

> She has chronic portal hypertension resulting from thrombophilia due to the presence of a Factor 5 Leiden mutation that caused thrombosis in her portal venus system, leading to hyperspenism and cytopenias (reduced white blood cells and platelets) and esophageal and gastric varices.  She is at risk for bleeding from her varices as well as Coumadin anticoagulation required to prevent further blood clots and the presence of thrombocytopenia (low platelet levels)[.]

AR1 309; *see also* Final Decision at 6 ("Ms. Marcin ceased working due to her primary diagnoses of hypercoagulable thrombosis, portal vein thrombosis, status post splenorenal shunt, and renal cell carcinoma with symptoms of 'extreme fatigue, frequent illness.'"); AR1 665 (Dr. Abu-Elmagd's statement of plaintiff's diagnoses in connection with her disability benefits claim). Despite the insurer's implication otherwise, Dr. Dean offers no opinion about plaintiff's "likelihood of cure" from these conditions.  The Court finds that Reliance's misleading use of the findings in Dr. Dean's report undermines the reasonableness of the Final Decision.

Finally, the Court observes that Reliance concluded that plaintiff was capable of full-time work without grappling in any way with the material in the record that shows that plaintiff did not

actually work full-time during any week between November 2007 and March 1, 2008.[12]   The

insurer's only acknowledgement of this issue is the statement that plaintiff worked-part time from

November 2007 to February 2008, "although the medical records did not support impairment from

full-time work."   Final Decision at 6.   But there is no evidence or even any allegation of

malingering by plaintiff, so Reliance's failure to address the records that suggest that plaintiff was

unable to work full-time and that the hours she did work declined steeply in February 2008, *see*

AR1 114, casts additional doubt on the reasonableness of the Final Decision. [13]   Although

---

12      The record reflects that plaintiff worked the following hours in the weeks before she stopped:

- 11/07:  Plaintiff returned to work with the approval of her physicians.
- 11/12–11/18/07:  Twenty-four hours.
- 11/19–11/25/07:  Seventeen hours.
- 11/26–12/02/07:  Twenty-six hours.
- 12/03–12/09/07:  Twenty-two hours.
- 12/10–12/16/07:  Twenty-nine hours.
- 12/17–12/23/07:  Twenty-eight hours.
- 12/24–12/30/07:  Zero hours.  (This week included the Christmas holiday.)
- 12/31/07–1/06/08:  Two hours.  (This week included the New Year's holiday.)
- 1/07–1/13/08:  Twenty-eight hours.
- 1/14–1/20/08:  Zero hours; Reliance records state she was "sick." AR1 742.
- 1/21–1/27/08:  Thirty-two hours.
- 1/28–2/3/08:  Twenty-four hours.
- 2/04–2/10/08:  Five hours.
- 2/11–2/17/08:  Four hours.
- 2/18/08:  Plaintiff stopped work completely.

AR1 114.

13      Indeed, Reliance ignores this material while criticizing plaintiff's vocational expert for "fail[ing] to account for the time period Ms. Marcin was in fact able to work."  Final Decision at 5.

plaintiff's employment records might support a finding that she was only partially, and not "totally" disabled, they do not support the finding that she was capable of working full-time.

In sum, the Final Decision reflects:  (1) a selective review of the medical evidence that omits any mention of three relevant records that undermine the conclusion that plaintiff could work full-time; (2) reliance on a mischaracterization of Dr. Dean's report; and (3) a failure to meaningfully engage with the undisputed fact that plaintiff never actually worked full time.  Taken together, these deficiencies suggest that Reliance's determination was not supported by "substantial evidence."  *See Buford*, 290 F. Supp. 2d at 100.  Moreover, the only evidence cited in the Final Decision that actually supports the finding that plaintiff could work full-time when she stopped is Dr. Dean's conclusion that plaintiff's "work capacity [was] in an approximately light category of work."  *See* AR1 310.  While "[i]t is not an abuse of discretion to value the opinions" of independent medical consultants over the opinions of plaintiff's treating physicians, *Pettaway*, 699 F. Supp. 2d at 205, under the circumstances presented here, the Court cannot conclude that Dr. Dean's "approximate" assessment of plaintiff's abilities, alone, constitutes the "more than a scintilla" of evidence that is required to support Reliance's decision.  *See Buford*, 290 F. Supp. 2d at 100. [14]

---

14     This is particularly true given the fact that Dr. Dean's assessment was based in part on his observation that plaintiff's medical records indicated that she traveled "frequent[ly]" to Pittsburgh to see doctors, "which usually go [sic] along with an adequate performance level."  AR1 310.  But there is no indication that plaintiff was driving, sitting upright, or even awake when those trips to Pittsburgh took place, and so it is difficult to see how the fact that plaintiff could endure travel to Pittsburgh reveals anything about the impact of her medical condition on her ability to work at all, much less, work full time, at the relevant time.  Moreover, this observation stands in tension with Reliance's statement that it was "curious" that plaintiff did not see Dr. Abu-Elmagd between November 2007 and March 1, 2008.  *See* Final Decision at 7.

For all of these reasons, the Court finds that Reliance's determination that plaintiff "was capable of performing all the material duties of her regular occupation on a full time basis between November 6, 2007 and March 1, 2008," Final Decision at 8, cannot be sustained, and it will enter judgment for the plaintiff.  The Court notes that it has not made a determination about whether plaintiff was or was not "totally disabled" within the meaning of the plan.  Rather, its holding is that the record in this case does not reasonably support the plan administrator's decision that plaintiff was capable of full-time work when she stopped, and since that is the basis for the denial of benefits, the denial cannot stand.

## CONCLUSION

For the reasons stated above, the Court finds that Reliance's Final Decision cannot be sustained.  Accordingly, it will deny judgment to defendants and enter judgment in favor of plaintiff.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  October 14, 2015