# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JILL MARCIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-1308 (ABJ) |
| | ) |
| RELIANCE STANDARD LIFE | ) |
| INSURANCE COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Since 2010, plaintiff Jill Marcin has been engaged in litigation under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, with defendants Reliance

Standard Life Insurance Company ("Reliance") and Mitre Corporation Long Term Disability

Insurance Program ("Mitre").  Reliance denied plaintiff's claim for disability benefits under the

Mitre plan on three previous occasions, but after each denial, the Court found that the denial was

not adequately justified, and it remanded the matter to the insurer for further consideration.  *See*

*Marcin v. Reliance Standard Life Ins. Co.* (*Marcin I*), 895 F. Supp. 2d 105 (D.D.C. 2012); Mem.

Op. & Order (Apr. 14, 2015) [Dkt. # 43] ("*Marcin II*"); *Marcin v. Reliance Standard Life Ins. Co.*

(*Marcin III*), 138 F. Supp. 3d 14 (D.D.C. 2015).[1]

In *Marcin III*, the Court found that because the insurer's decision to deny benefits to

plaintiff could not stand, judgment would be entered in favor of plaintiff.  138 F. Supp. 3d at 30.

---

1       Given the limited purpose of this phase of the proceedings – to determine damages – the
Court will incorporate its previous explanations of the facts and procedural history of this case,
and will not repeat them here.  *See Marcin I*, 105 F. Supp. 2d at 107–12; *Marcin II* at 1–7; *Marcin
III*, 138 F. Supp. 3d at 17–21.  And in line with the Court's practice in its previous opinions,
citations to "AR1" refer to the administrative record filed in the first iteration of this case.  *See*
Admin R., *Marcin v. Reliance Life Ins. Co.*, No. 10-cv-1816 (ABJ) [Dkt. # 26].

In its Order, the Court directed the parties to address the sole remaining issue of damages in supplemental filings due on October 26, 2015.  Order (Oct. 14, 2015) [Dkt. # 47].  Plaintiff responded to the Court's Order with a motion.  Pl.'s Mot. to Determine Damages & Att'y Fees [Dkt. # 49] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 49-1] ("Pl.'s Mem."). Defendants responded with a memorandum of law in support of their position, Defs.' Position as to Damages [Dkt. # 50] ("Defs.' Mem."), and they also separately opposed plaintiff's motion. Defs.' Mem. of Law in Resp. & Opp. to Pl.'s Mot. [Dkt. # 52] ("Defs.' Opp.").  Plaintiff replied in support of her motion, Pl.'s Reply to Defs.' Opp. [Dkt. # 53] ("Pl.'s Reply"), and also responded to defendants' memorandum of law.  Pl.'s Resp. to Defs.' Mem. [Dkt. # 51] ("Pl.'s Resp.").

In light of the parties' disagreement on the amount of damages that should be awarded, the Court referred the matter to a Magistrate Judge for a Report and Recommendation.  Order (Nov. 10, 2015) [Dkt. # 54].  The Magistrate Judge issued a Report and Recommendation on March 18, 2016.  R. & R. [Dkt. # 56].  The Magistrate Judge found that plaintiff's "Covered Monthly Earnings," should be based, as plaintiff argued, on an annual salary of $90,000 per year.  R. & R. at 7–8.  But the Magistrate Judge agreed with defendants that plaintiff was entitled to only 24 months of benefits under the policy at this time.  *Id.* at 9–10.  And the Magistrate Judge found that plaintiff was entitled to some attorneys' fees, but not the full amount that her counsel requested. *Id.* at 10–22.  In total, the Magistrate Judge recommended that plaintiff should receive $57,840 in damages, and $108,360 in attorneys' fees, for a total award of $166,200.  R. & R. at 22.

Defendants objected to the recommended calculation of the benefits due based on the "Covered Monthly Earnings" of $7,500 per month, or $90,000 per year, the award of attorneys' fees and costs, and the award of post-judgment interest at the rate of 6 percent.  Defs.' Partial Objs. to R. & R. [Dkt. # 57] ("Defs.' Objs.") at 1.  Defendants did not object to the part of the Report

and Recommendation that found plaintiff entitled to only 24 months of benefits. *Id.* Plaintiff did

not file any objections to the Magistrate Judge's decision, but she did respond to defendants'

objections. Pl.'s Resp. to Defs.' Objs. [Dkt. # 58]. Defendants also supplemented their exhibits

with a more legible version of one of plaintiff's pay stubs. Suppl. to Defs.' Objs. [Dkt. # 61]

("Defs. Suppl.").

## STANDARD OF REVIEW

Where, as here, a matter is referred to a magistrate judge for a report and recommendation,

the court must review *de novo* those portions of the findings and recommendations to which an

objection has been filed. LCvR 72.3(c); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must

determine *de novo* any part of the magistrate judge's disposition that has been properly objected

to."). The court "may make a determination based solely on the record developed before the

magistrate judge, or may conduct a new hearing, receive further evidence, and recall witnesses."

*Id.* The court "may accept, reject, or modify, in whole or in part, the findings and recommendations

of the magistrate judge, or may recommit the matter to the magistrate judge with instructions."

*Id.*; *see also* Fed. R. Civ. P. 72(b)(3).

## ANALYSIS

The Court reviews the Covered Monthly Earnings question *de novo*, in light of defendants'

objection. Based on its review of the record, it concludes that plaintiff's salary was approximately

$90,000 per year, or about $43 per hour, and that the first 24 months of benefits should be

calculated on that basis. And given plaintiff's lack of objection to this recommended procedure,

the Court will remand the matter to Reliance yet again to determine whether plaintiff is entitled to

benefits beyond 24 months. As to attorneys' fees, the Court will apply a larger discount to

plaintiff's counsel's hours in light of counsel's insufficient billing practices.   The Court also concludes that the post-judgment interest rate should be 0.27 percent.

## I.      The Court finds that plaintiff's salary was equivalent to $90,000 per year.

Pursuant to the terms of the Reliance life insurance policy in question, the benefit amount payable is calculated by multiplying the insured's "Covered Monthly Earnings" by a percentage that is set forth in the policy.   Ex. C to Aff. of Karen McGill [Dkt. # 50-1] ("Policy") at 2.0. Plaintiff contends that her benefits should be based on an annual salary of $90,000 per year.   Pl.'s Mem. at 2–3.   Defendants, relying on the affidavit of Karen McGill, an employee of Reliance, take the position that plaintiff's annual salary at the time that she became disabled was $72,000 per year, or $6,000 per month, because she was working a reduced schedule at that time.   Defs.' Mem. at 3; *see* Aff. of Karen McGill [Dkt. # 50-1] ("McGill Aff.") ¶¶ 4, 6.   Although there appears to be no dispute that plaintiff's annual salary was $90,000, defendants point out that the annual figure was based on a 40-hour work week.   Defs.' Mem. at 3.   According to defendants, since plaintiff did not work 40 hours per week for "quite a while before she claimed disability," and she had reduced her hours to 32 hours per week, "there was a corresponding drop in her salary to $72,000." *Id.*; McGill Aff. ¶ 15.

The definitions section of the Policy provides that:

> "Covered Monthly Earnings" means the Insured's monthly salary received from [the employer] on the day just before the date of Total Disability, prior to any deductions to a 401(k) or Section 125 plan.   Covered Monthly Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings.

> If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings.   If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basic annual salary by 12.

Policy at 2.0.   And the "Monthly Benefit" is calculated as "60% of Covered Monthly Earnings." *Id.* at 1.0.

To calculate her monthly earnings, plaintiff points to an undated memorandum, addressed "To Whom It May Concern" from Mitre payroll supervisor Debra A. Deeb, which explains that "[t]he MITRE annual salary for Jill M. Marcin effective August 2007 was $90,000.00 and at that time she was scheduled to work 32 hours per week."  Ex. 1 to Pl.'s Mot. [Dkt. # 49-2].  Plaintiff also points to the Personnel Action Notification – which has more evidentiary value than the undated memorandum, as it appears to be a business record – which reflects the raise plaintiff received effective March 19, 2007 from $85,000 per year to $90,000 per year.  Ex. 2 to Pl.'s Mot. [Dkt. # 49-3].  The document identifies plaintiff as a "Full-Time" employee, explains that the "official pay rate for all employees is the bi-weekly salary," and it explains how that number is calculated.  *Id.*

Defendants point to a different business record, "a payroll record printout from near the time Ms. Marcin stopped working."  McGill Aff. ¶ 5;[2] Ex. B to McGill Aff. [Dkt. # 50-1].  The payroll record is a screenshot of plaintiff's pay stub dated September 21, 2007, for the two-week pay period from September 3, 2007 to September 16, 2007, for which plaintiff was paid

---

2    The administrative record in this case, including Reliance's own records, indicates that there is no real dispute concerning when plaintiff was last at work:  plaintiff's disability claim identifies August 19, 2007 as the "last day [she] worked before the disability," but notes that she was "most recently unable to work on a full time basis" beginning in March 2007.  AR1 657.  The December 2007 letter from Mitre notifying Reliance of the potential claim says "Ms. Marcin has not able to work since August 20, 2007."  AR1 1482.  Indeed, Reliance never claimed that plaintiff was not disabled in August 2007 – it denied her claim on the grounds that she got better, and that she was not impaired after November 6, 2007 when she returned to work after her August surgery. *See* AR1 743.

5

$2,769.23.  McGill Aff. ¶ 6; Ex. B. to McGill Aff.[3]  McGill also offers the following information

in her affidavit:

> Plaintiff claims that her monthly benefit should be based on a yearly salary
> of $96,000 instead of $72,000.  I spoke with The Mitre Group and was told
> that when Plaintiff was working 40 hours per week, her salary was $96,000;
> however, prior to and including August 20, 2007, Plaintiff reduced her
> hours to 32 per week and continued to work 32 hours or less until she
> stopped working on February 17, 2008.  As a result, The Mitre Group
> reduced her salary to $72,000.

McGill Aff. ¶ 15.

Defendants do not dispute that plaintiff's annual salary for full-time work was supposed to

be $90,000 (indeed, McGill states it was $96,000), and that figure seems to be amply supported

by the Personnel Action Notification.  Defendants argue that plaintiff's "salary was reduced"

when she reduced her hours, but what the record shows is that her regular hourly rate was simply

applied to a reduced number of hours.  Defendants' exhibit, the Mitre payroll stub, states that

plaintiff's "hourly rate" was $43.27.  Defs.' Suppl. at 1.  Since she worked 64 hours during the

two-week pay period reflected in the document (which is the only pay period for which the Court

has been provided information, although it is not the pay period immediately before the date of

disability), the employer multiplied the hourly rate by 64, and plaintiff made $2,769.23.  So while

she may have made less for that two week period than she would have made if she worked the

full 40 hours per week, the document reflects that plaintiff was paid the hourly rate that would

have yielded $90,000 per year if she did work 40 hours per week.  This raises the question:  if the

reduced number of hours reduced plaintiff's total earnings, did it reduce her "salary"?

One problem that arises in this case is that there is a disconnect between the definition of

"Covered Monthly Earnings" in the Policy, which speaks in terms of "monthly salary received,"

---

3   At the Court's request, defendants supplemented the evidence with another, clearer
version of this pay stub.  Defs. Suppl.

and Mitre's payroll records, which reflect a bi-weekly payroll system.  So must the Court calculate the monthly earnings as of August 19 based on full-time work, or based on just the 32 hours per week?  Defendants offer hearsay presented through McGill that someone at Mitre stated that prior to August 21, plaintiff was working only 32 hours a week.  McGill Aff. ¶ 15.  But McGill's affidavit is consistent with plaintiff's own exhibit, the Deeb memorandum, which raises its own hearsay issues but states, "at that time [August 2007] she was scheduled to work 32 hours per week," Ex. 1 to Pl.'s Mot., and the payroll record that reflects that "[f]rom 4/2/07 – 11/4/07 J. Marcin worked 32 hours per week."  Ex. 4 to Pl.'s Mot. [Dkt. # 49-5] at Marcin2 002115.[4]

Given those difficulties, the Court will turn to the language in the Policy that applies to hourly employees.  Plaintiff and defendants both seem to be treating plaintiff as someone who was paid on an annual, and not an hourly basis, but the record produced by defendants suggests that the Court can appropriately utilize the approach set out in the Policy for an hourly employee: after all, it says "Pay Rate:  $43.27000 Hourly."  Defs.' Suppl.  If the Court were to treat plaintiff as an hourly employee, all it would have to do is multiply the hourly rate by the hours worked during a "regular work week" and no one, not even Reliance, is claiming that 32 hours was plaintiff's "regular" work week – defendants describe it as her "reduced" work week.  *See* McGill

---

4       That same payroll record suggests that when plaintiff came back to work, from November 3, 2007 to July 28, 2008, she worked "40 hours per week," Ex. 4 to Pl.'s Mot. at Marcin2 002115, which provides further support for the notion that plaintiff's salary was not reduced to account for her reduced schedule, but rather that she was simply paid based on the number of hours that she worked.  But the fact that plaintiff worked 40 hours per week during that time period is not wholly supported by other parts of the record, which make clear that she worked a limited number of hours between November 12, 2007 and February 8, 2008, and that she stopped working completely on November 18, 2008.  *See Marcin I*, 895 F. Supp. 2d at 109.  Plaintiff points out, however, that even if she was noted as scheduled to work forty hours per week in that time frame, she was using sick leave for most of that time.  *See* Ex. 4 to Pl.'s Mot. at Marcin2 002115.

Aff. ¶ 15.  Further, the Personnel Action Notification from before plaintiff was disabled describes her as a "Full-Time" employee.  Ex. 2 to Pl.'s Mot.

Therefore, the Court concludes that plaintiff's rate was $43.27 per hour.  Applying the calculation set forth in the Policy, one can determine that if plaintiff had worked 40 hours per week times 4.333 weeks per month, her salary would equal approximately $7,500 per month or $90,000 per year, *see* Policy at 2.0, and that is the amount to be utilized in the benefits calculation.[5]

Once the Covered Monthly Earnings have been ascertained, the Policy sets forth a formula to be used to determine the Monthly Benefit:

> **BENEFIT AMOUNT**:  To figure the benefit amount payable:
>
> > (1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
> >
> > (2) take the lesser of the amount:
> >
> > > (a) of step (1) above; or
> > >
> > > (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
> >
> > (3) subtract Other Income Benefits, as shown below, from step (2) above.

Policy at 9.0.  The relevant benefit percentage is "60% of Covered Monthly Earnings," and the maximum monthly benefit is $18,400 for employees hired before January 1, 2002, and $15,000 for employees hired after that date.  *Id.* at 1.0.

---

[5]     The Court is mindful that it cannot overturn a benefits decision so long as it is reasonable. *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (D.C. Cir. 1992); *see also Marcin I*, 895 F. Supp. 2d at 113.  But the Court is not reviewing a benefits "decision."  Reliance has previously rendered a decision that plaintiff was not entitled to benefits at all, and the Court found that its decision could not be sustained.  *Marcin III*, 138 F. Supp. 3d at 30.  Because Reliance did not make a further "decision" about the amount of benefits due to plaintiff after the Court's October 2015 opinion in *Marcin III*, and the Court is considering only the calculation of the benefits due to plaintiff, the deferential standard of review does not apply.

So, turning to the arithmetic:  plaintiff's hourly rate – $43.27 – multiplied by the number of hours worked in a "regular" work week – 40 – is $1,730.80 per week.  That number, multiplied by 4.333, yields a Covered Monthly Earnings figure of $7,499.56.  Taking steps (1) and (2) together:  Covered Monthly Earnings, $7,499.56, multiplied by 60%, equals $4,499.74, which is less than the Maximum Monthly Benefit.

The parties agree that Marcin received $2,090 per month in Other Income Benefits.  *See* Pl.'s Mem. at 3; Defs.' Mem. at 3.  So plaintiff's monthly benefit amount is $4,499.74 minus $2,090, or $2,409.74 per month.  Multiplied by 24 months, plaintiff will be awarded $57,833.76 in this case.

## II.  The Court must remand the matter to Reliance to determine whether plaintiff is entitled to more than 24 months of benefits.

The parties also dispute whether the benefits due to plaintiff terminate after 24 months, or whether plaintiff is entitled to benefits for a lengthier period of time.  Under the terms of the Policy, an insured is "Totally Disabled" if after a Monthly Benefit has been paid for 24 months, the insured "cannot perform the material duties of any occupation."  Policy at 2.1.  The Policy explains that "[a]ny occupation is one that the Insured's education, training or experience will reasonably allow," and that the insurance company would consider an insured "Totally Disabled if due to an Injury or Sickness he or she is capable of performing the material duties on a part-time basis or part of the material duties on a Full-time basis."  *Id.*

In the Report and Recommendation, the Magistrate Judge determined that "the Court must remand the case to Reliance to determine whether Marcin was Totally Disabled to perform the material duties of 'any occupation'" before plaintiff can receive benefits in excess of 24 months. R. & R. at 9.  And though plaintiff opposed another remand in the motion to determine damages, Pl.'s Mot. at 4, and she argued in a stricken supplemental pleading that she continues to be quite

sick, she did not object to this portion of the Report and Recommendation.  Given the absence of evidence on the record on this issue, the Court agrees with the Magistrate Judge that a limited remand is appropriate to determine whether plaintiff was totally disabled from any occupation.

The Policy indicates that the operative date to consider in deciding whether plaintiff was "Totally Disabled" is 24 months after the Elimination Period ended and the initial payment would have been due.  Policy at 2.1.  The Elimination Period is "a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable.  It begins on the first day of Total Disability." *Id.* at 2.0.  The Schedule of Benefits identifies the Elimination Period as "180 consecutive days of Total Disability or the end of The MITRE Corporation's continuation program." *Id.* at 1.0.  So benefits were due to begin either 180 days after plaintiff first stopped working on August 20, 2007, or when plaintiff stopped receiving a salary. *See* Defs.' Mem. at 3.  Plaintiff first went out on disability on August 20, 2007, and she stopped working completely on February 15, 2008. *See Marcin I*, 895 F. Supp. 2d at 108, citing AR1 742.  So, the Elimination Period would end on February 16, 2008, which is 180 days after the date when plaintiff first claimed total disability. *See* McGill Aff. ¶ 12.[6]  The benefits would end 24 months later, on February 16, 2010.

"[A]fter a Monthly Benefit has been paid for 24 months," an insured will be considered totally disabled if he or she "cannot perform the material duties of any occupation." Policy at 2.1.  Reliance has never determined whether plaintiff could perform the material duties of any occupation at that time, *see* McGill Aff. ¶ 17, and the Court agrees with the Magistrate Judge that

_____

6    Plaintiff seems to argue that her benefits should begin on June 11, 2008, but she offers no support for that calculation. *See* Pl.'s Mem. at 3.  In light of the undisputed evidence that plaintiff first claimed disability on August 20, 2007, and that her last day of work was February 15, 2008, *Marcin I*, 895 F. Supp. 2d at 108, citing AR1 742, the Court will use those dates to determine when her benefits should begin and end.

defendants have not waived the issue.  R. & R. at 9.  Though the Court has presided over this matter for many years, and would like to see it come to a prompt resolution, the Court cannot circumvent the necessary procedure and simply declare that plaintiff is due benefits in excess of 24 months at this time.

So the Court will remand the matter to Reliance for the consideration of whether plaintiff could perform the material duties of any occupation as of February 16, 2010.

### III.   The Court will award attorneys' fees in the amount of $72,240.

Plaintiff has also moved for attorneys' fees.  Pl.'s Mem. at 4–8.  Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  This default rule, however, can be overcome by a statute allocating attorneys' fees.  *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).  Section 502(g)(1) of ERISA provides that the court has discretion to award "a reasonable attorney's fee . . . to either party."  29 U.S.C. § 1132(g)(1).  To recover fees, a party must establish "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010), quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983).  But the party does not have to be a "prevailing party" to recover attorney's fees under Section 502(g)(1) of ERISA.  *Id.* at 252.

The Court finds that plaintiff is entitled to some award of attorneys' fees in this case, but it is concerned by the disparity between the amount to be awarded to plaintiff and the amount of the fee, and by inadequacy of counsel's time entries, especially given the amount of unnecessary surplusage that was contained in a number of plaintiff's pleadings.  So the Court will discount plaintiff's counsel's hours by 40 percent, for a total fee award of $72,240.

A.     **Application of the statutory factors counsel in favor of an award.**

The award of attorneys' fees is discretionary, and in setting a reasonable award, the Court "may" consider the factors discussed by the D.C. Circuit in *Eddy v. Colonial Life Ins. Co.*, 59 F.3d 201 (D.C. Cir. 1995).  The five factors are:

> (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions.

*Id.*, quoting *Grand Union Co. v. Food Emp'rs Labor Relations Ass'n*, 808 F.2d 66, 72 (D.C. Cir. 1987).  "The factors are neither exclusive nor quantitative, thereby affording leeway to the district courts to evaluate and augment them on a case-by-case basis."  *Id.* at 206.

In the Report and Recommendation, the Magistrate Judge found that the first factor favored the defense, because even though the Court found for plaintiff, the Court had previously concluded that defendant had not acted in bad faith.  R. & R. at 10–11, quoting *Marcin III*, 138 F. Supp. 3d at 20.  The defendants did not dispute the second factor.  *Id.* at 11.  The Magistrate Judge found that the third factor – deterrence – favored plaintiff because an award of attorneys' fees "will deter other claim administrators from denying due benefits to their participants and dragging them into a prolonged litigation."  *Id.* at 11–12.  And, as to the "value of the victory," the Magistrate Judge concluded that plaintiff's cause conferred a benefit "on future plaintiffs by providing guidance for interpreting Section 502(c) of ERISA," and so that factor favored plaintiff, as well.  *Id.* at 12–13.  Finally, the Magistrate Judge assessed the relative merits of the parties' positions, and found that plaintiff prevailed on the merits, and that her position was "substantially warranted."  *Id.* at 13.

Defendants first object to the Magistrate Judge's analysis of the deterrence factor, arguing that "[w]hen the Court reviews the relative conduct of the parties . . . it is clear that it is not Defendants' conduct that should be deterred."  Defs.' Objs. at 4.  The Court recognizes that

plaintiff's approach to this litigation has been off the mark at times.  But the Court found that the initial denial of benefits was unsupported because it was accompanied by an unclear and poorly articulated decision, *Marcin I*, 895 F. Supp. 2d at 122–23, that defendants' failure to consider the Social Security decision was unreasonable, even if the insurer wasn't ultimately bound by that decision, *Marcin II* at 10–14, and that the ultimate decision that plaintiff was capable of full-time work was not only not supported by the record, but also based on a mischaracterization of the record.  *Marcin III*, 138 F. Supp. 3d at 30.  Each of those decisions required plaintiff to engage in lengthy litigation to get any recovery at all.  So the Court finds that it is important to deter not only this insurer but other insurers as well, and the record fully supports an award of fees on that basis.

Defendants also object to the Magistrate Judge's finding as to the significance of the legal issues, arguing that the Magistrate Judge's finding "makes no sense," and that plaintiff "should not be rewarded for making legally erroneous arguments that are rejected."  Defs.' Objs. at 4.  It is true that plaintiff did not prevail on a number of legal theories, but she did raise important issues about whether the insurer was bound to consider the Social Security determination, and she prevailed on that issue.  *See Marcin II* at 10–14.

Finally, defendants object that because the Court never concluded that plaintiff "was totally disabled as she claimed," and because she "failed on many issues," she has not "prevailed on the merits."  Defs. Objs. at 5.  Again, while there were certain issues on which the Court ruled in favor of defendants, on the most significant issue – concerning whether the denial of benefits was supported by the record – plaintiff was clearly the victor.  *See Marcin III*, 138 F. Supp. 3d at 30.

For all of those reasons, defendants' objections are not persuasive, and the Court finds, after considering the entire record *de novo*, that the statutory factors favor an award of at least some attorneys' fees in this case.

**B.     Because of the lack of specificity in plaintiff's counsel's billing records, the Court will reduce the award of attorneys' fees to $72,240.**

Having found that plaintiff is entitled to an award of attorneys' fees, the Magistrate Judge then considered what amount would be appropriate.   The Magistrate Judge reviewed all of plaintiff's counsel's billing records, and defendants' objections to the reasonableness of the hours expended, and found that much of the claimed fee was unreasonable, either because plaintiff did not prevail on issues on which she sought fees, *see* R. & R. at 15–18, or because the entries were incorrect.  *Id.* at 18–19.   In those instances, the Magistrate Judge removed the hours from the calculation.  *Id.* at 15–20.   The Magistrate Judge also found that plaintiff's counsel's "invoice is replete with . . . vague, inadequate entries," and applied an across-the-board reduction of 10 percent of the hours expended to account for those inadequacies.  *Id.* at 21.

Defendants do not object to the Magistrate Judge's exclusions of certain of plaintiff's claimed hours. Defs.' Objs. at 5 ("While Defendants can quibble about the amount of time spent on numerous entries, the Recommendation largely, if not sufficiently, accounted for the over-billing.").[7]   But they contend that a 10 percent reduction is an insufficient sanction, and they argue that "no fees should have been awarded for the numerous insufficient entries," or that "a reduction significantly higher than ten percent should be applied."  *Id.* at 5–6.

The Supreme Court explained in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours

---

7     Plaintiff's counsel originally indicated that he reasonably expended 297.9 hours on this matter.  Ex. 1 to Pl.'s Reply [Dkt. # 53-1] at 11.  The Magistrate Judge deducted 57.1 hours for matters on which plaintiff's counsel's time was unreasonably spent, *see* R. & R. at 21 n.21, and plaintiff did not object to this aspect of the Magistrate Judge's recommendation.  So 240.8 hours remain.

worked and rates claimed.   Where the documentation of hours is insufficient, the district court may reduce the amount accordingly.

*Id.* at 433.  The Magistrate Judge found that $500 per hour was a reasonable rate for plaintiff's counsel, R. & R. at 15, and neither party objected to that finding, so the Court will adopt it.  Plaintiff did not object to the Magistrate Judge's conclusion that her counsel's billing records were inadequate, and the Court now finds, in an exercise of its discretion, that a reduction of 40 percent is warranted based on its own review of those records and the pleadings over the course of the case.  Therefore, plaintiff's counsel will be awarded $72,240 in attorney's fees.[8]

## IV.   The applicable post-judgment interest rate is 0.27%.

Plaintiff contends that the Court should award post-judgment interest from the date that *Marcin III* was issued – October 14, 2015 – to present, at the rate of 6 percent.  Pl.'s Mem. at 3, citing D.C. Code § 28-3302(a).  That provision of the D.C. Code indicates that "[t]he rate of interest in the District upon the loan or forbearance of money, goods, or things in action in the absence of expressed contract, is 6% per annum."  D.C. Code § 28-3302(a).  The Report and Recommendation adopted plaintiff's argument without explanation.  R. & R. at 22.

Defendants have since pointed to a federal statute which requires that post-judgment interest be awarded at a rate set by the Treasury Department.  *See* Defs.' Objs. at 6, citing 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

---

8       The Court multiplied the 240.8 hours reasonably expended in this case by 0.60, which resulted in a total number of hours reasonably expended of 144.48 hours.  144.48 hours multiplied by $500 per hour yields $72,240.

Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment.").

Plaintiff argues that defendants "are not permitted" to bring this statute to light, since they already had the opportunity to brief the interest rate before the Magistrate Judge,[9] and because they have "failed to offer any case support for why this statute should be applicable in the ERISA setting." Pl.'s Resp. to Defs.' Objs. at 5. But plaintiff has also not explained why the D.C. Code should control in this litigation, which is based on a federal statute – ERISA – and when a federal statute sets the post-judgment interest rates.[10] So the Court will not adopt the Magistrate Judge's recommendation as to the interest rate, and will instead use the federal statute to determine the post-judgment interest rate.

The Court's opinion in *Marcin III* was issued on October 14, 2015. The rate of interest "for the calendar week preceding the date of the judgment" was 0.27% for the week ending on October 9, 2015. *See* Selected Interest Rates, Federal Reserve, www.federalreserve.gov/releases/h15/20151013. So defendant will pay post-judgment interest at the rate of 0.27% per annum from October 14, 2015 to present.

---

9  There is authority in this jurisdiction for the proposition that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *See Klayman v. Judicial Watch*, 628 F. Supp. 2d 84, 95 (D.D.C. 2009), quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996). But it is not wholly clear that plaintiff raised this "issue" in her motion. Though she cited the D.C. Code provision and included it as part of her calculation of the benefits owed to her, Pl.'s Mem. at 3, there was no legal argument presented about why that interest rate was appropriate. So, though defendants would have been wise to challenge the interest rate sooner, the Court will not find that they have waived the objection. Moreover, it is incumbent upon the Court to apply the law when it reviews the Magistrate Judge's recommendation.

10  Plaintiff might be harkening back to a different time, when the previous version of the federal statute permitted post-judgment interest "at the rate allowed by state law." *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 248 (D.C. Cir. 1987), quoting 28 U.S.C. § 1961 (1982). But that is not what the statute provides today.

**CONCLUSION**

For the foregoing reasons, the Court finds that plaintiff is entitled to benefits of $2,409.74 per month for the 24 month period between February 16, 2008 and February 16, 2010, or $57,833.76, plus post-judgment interest at the rate of 0.27 percent per annum from October 14, 2015 to present.  But, to determine whether plaintiff is eligible for benefits beyond 24 months, the Court must remand the matter to Reliance.

Further, the Court will award plaintiff's counsel $72,240 in attorneys' fees for his successful litigation of this matter.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 4, 2016

17